(28 App. Div. 396.)

DAVIS v. UNITED PORTABLE HOISTING ENGINEERS et al.

(Supreme Court, Appellate Division, First Department. April 22, 1898.)

1. TRADES UNIONS—INJUNCTION—EXCLUSION FROM WORK.

In an action by a nonunion engineer against a union, for an injunction, and founded upon averments that plaintiff was the object of a persecution resulting from a determination to exclude him from working at his trade for anybody or under any circumstances, the testimony given on his behalf by his former employer was that the witness had only employed him temporarily from time to time, while unable to secure a union engineer. *Held*, that the evidence was entirely insufficient to establish plaintiff's case.

2. SAME—RIGHTS OF MEMBERS.

Members of trades unions, as well as other individuals, have a right to say that they will not work with persons who do not belong to their organization; and whether they say this themselves or through their organized societies makes no difference. They have the right, by pursuing that method, to secure employment for their own members.

Rumsey, J., dissenting.

Appeal from special term.

Action by Benjamin P. Davis against the United Portable Hoisting Engineers and another. From a judgment for plaintiff, defendants appeal. Reversed.

Argued before VAN BRUNT, P. J., and RUMSEY, McLAUGHLIN, PATTERSON, and INGRAHAM, JJ.

John C. Robinson, for appellants.

F. C. Cantine, for respondent.

PATTERSON, J. The judgment appealed from in this case restrained the defendants from interfering with or in any manner preventing the plaintiff from obtaining employment in his trade and occupation of hod-hoisting engineer in the city of New York or elsewhere, and from procuring or coercing, by threats or other-

wise, the dismissal or discharge of the plaintiff by any employer from his employment, and further directed a money judgment for damages against the defendant the United Portable Hoisting Engineers.   There is absolutely no foundation in the evidence for a money judgment, and the only subject now requiring consideration is whether, under that evidence, in any aspect in which it may be viewed, the plaintiff was entitled to an injunction.   It is averred in the complaint that the defendant corporation was formed for the purpose and with the design chiefly to secure employment in said trade for its members, and to prevent other persons of the same trade, but not members of said union, from procuring or retaining such employment; that the defendant Gibbons was an officer and agent of that corporation; that the plaintiff was a skilled hod-hoisting engineer by trade and occupation, and depended upon his daily labor therein for the support and maintenance of his family; that in and about the month of June, 1895, the defendant corporation, and its officers and members, with intent to injure the plaintiff, and deprive him of employment in his trade and the means of support, conspired and agreed together, and with one Merrit P. Simpson, and with other persons, not to hire hod-hoisting engineers who were nonunion men, provided union men could be obtained; that thereafter, and in or about the month of June, 1895, and in June, August, and December, 1896, and March, 1897, while the plaintiff was employed by and working for said Simpson in his said trade, said defendants, in pursuance of said conspiracy and agreement, and by threatening said Simpson that, if he did not discharge the plaintiff from his employment, they would order and compel other said engineers, union men, then in his employment, to withdraw from such employment, thus hindering and embarrassing him, by stopping his work on buildings then in course of erection, to his great loss and injury, so intimidated and coerced said Simpson that he, yielding to the demands and threats aforesaid of said defendants, and for no other reason whatever, discharged the plaintiff from his employment, to his great damage; that the defendants have continued so to threaten and to combine and conspire together against the plaintiff, and with the like intent and effect, as aforesaid, from the month of June, 1895, until the commencement of this suit; that by reason of such unlawful combination, conspiracy, threats, and intimidations, and in consequence of his said dismissal, the plaintiff has not been able to procure employment of any other kind since the month of August last.   The plaintiff prayed for an injunction and a money judgment.

No finding was made that any conspiracy existed, the learned judge stating in his opinion that the conspiracy alleged in the complaint was not proved.   That much of the complaint failing, the inquiry is left as to the plaintiff being entitled to an injunction against the defendant corporation or Gibbons, by reason of any act or thing done by Gibbons as directly affecting the plaintiff.   All that the proof shows is that the plaintiff was a nonunion hod-hoisting engineer, who worked at various places, and with various persons, at certain times mentioned in his testimony; that he was discharged

several times by reason of something done or said by Gibbons to his (the plaintiff's) employers, but what Gibbons said to or did with other employers of the plaintiff than Simpson is not made to appear, and, indeed, the whole case with reference to the plaintiff's relations to employers other than Simpson is so inconclusive and indefinite that it amounts to nothing.

We assume for the purposes of this case that no individual or association of individuals has any right wantonly so to interfere with a man in the exercise of his craft, business, or profession as to prevent him from earning his livelihood in that profession, craft, or business, and that if a case is presented in which it is shown that the only motive which impels the interference is to prevent a particular individual from making his living, irrespective of other considerations, a court of equity will interfere where no adequate remedy at law exists. But that is not this case. The only employer the plaintiff ever had who was called as a witness was Simpson, who swore that he employed the plaintiff on several jobs, "until I could get a union engineer to send in his place. I would send for a union engineer, and couldn't get one; and, sooner than have the work stop, I would send for Mr. Davis, and send him. I discharged him five or six times, I guess." The whole drift of Mr. Simpson's testimony is that he employed the plaintiff only temporarily, until he could get union engineers, and therefore the plaintiff failed in establishing that his discharge was the result of a design on the part of the defendants, under any and all circumstances, to exclude him from making his livelihood. It is true that Simpson says that he understood that Gibbons would stop his engineers in case he did not stop Mr. Davis. But there can be no doubt that members of trades unions, as well as other individuals, have a right to say that they will not work with persons who do not belong to their organization; and whether they say it themselves or through their organized societies can make no difference. They have the right by that method to secure employment for their own members. Mr. Simpson's testimony clearly establishes that his employment of Davis was only temporary, and until he could get union men. We think, therefore, that the testimony in this case was entirely inadequate to establish that which it was necessary for the plaintiff to prove under the averments of his complaint, namely, that he was the object of a persecution based upon a determination to exclude him from working at his trade for anybody or under any circumstances.

The judgment should be reversed, and a new trial ordered, with costs to appellant to abide event.

VAN BRUNT, P. J., and McLAUGHLIN, J., concur.

RUMSEY, J. (dissenting). I concur with Mr. Justice PATTERSON in his conclusion that there is no evidence to warrant a judgment for money damages, and that, so far as that portion of the judgment is concerned, it cannot stand. I also concur in the rule of law suggested in his opinion. I have no doubt that an action

will lie against a person who maliciously induces another to refuse to employ the plaintiff in his business, for the purpose of preventing the plaintiff from earning a livelihood thereby, if it appears that the plaintiff has suffered injury from such action.    In that regard, I think that the case of Flood v. Jackson [1895] 2 Q. B. 21, correctly states the law of this country.    I am aware that that case has been reversed by the house of lords; but that reversal was made by a divided court, against the opinion of a large majority of the judges of England, and, in my judgment, it cannot be sustained either upon principle or authority.    But I think an examination of the record in this case discloses that there was sufficient evidence to warrant the learned justice in the court below in finding the facts which he did find, and which brought the case within the rule laid down in Flood v. Jackson.    I do not purpose to recapitulate those facts. They establish clearly, as it seems to me, that Simpson was practically coerced into discharging the plaintiff from his employment, and that the object with which that coercion was applied was to prevent the employment of the plaintiff because he had been rejected in his application for membership in the union.    As the result of that coercion, practiced not only upon Simpson, but upon others, it appeared that the plaintiff was practically prevented from obtaining any work at his trade for a long period of time.    These facts, as it seems to me, warranted the justice below in awarding an injunction, and so much of the judgment should be affirmed.

INGRAHAM, J.    I concur with Mr. Justice PATTERSON in the reversal of this judgment.    The defendant the United Portable Hoisting Engineers is a corporation organized under the law of this state, and is composed exclusively of persons whose trade is that of "hod-hoisting engineers," engaged in managing and running engines employed in hoisting hods of mortar and other materials used in the erection of buildings in the various stages of their progress; and the defendant Gibbons is a representative of this corporation, attending to its business, and looking after its interest.    The objects for which this corporation was formed do not appear.    The allegation of the complaint upon that subject was expressly denied by the answer, and no evidence was introduced upon the subject upon the trial.    There was evidence upon the trial, however, tending to show that the defendant Gibbons, as representing this corporation, stated to a Mr. Simpson that he had heard that he "had Mr. Davis working again; that I would have to let him go."    Gibbons said that Simpson would get into trouble by keeping him.    And, in consequence of these statements, it was alleged that Simpson discharged the plaintiff from the employment on a member of the defendant corporation presenting himself to take Davis' place.    Simpson testified, in answer to a question of the plaintiff as to what he understood by Gibbons' statement that there would be trouble about the continued employment of Davis: "It is understood among us people that we employ only union engineers.    I understood that Gibbons would stop my other engineers in case I didn't stop Mr. Davis." Simpson testified that he was in the habit of sending for Davis, and

employing him on jobs until he (Simpson) could get a union en-
gineer to take his place; that he (Simpson) would send for a union
engineer, and, when one was not available, he would send for Davis,
until he could get a union engineer, and, when a union engineer pre-
sented himself, Davis would be discharged, and the union engineer
employed.    There was not a particle of evidence to show that the
defendant corporation, or Gibbons, as their representative, in-
tended, or in fact did, any injury to the plaintiff, except so far as the
employment of members of this corporation precluded others from
doing the work that the members of the defendant corporation did.

The court of appeals, in the case of Curran v. Galen, 152 N. Y. 36,
46 N. E. 298, held:

"In the general consideration of the subject, it must be premised that the or-
ganization or the co-operation of workingmen is not against any public policy.
Indeed, it must be regarded as having the sanction of law, when it is for such
legitimate purposes as that of obtaining an advance in the rate of wages or com-
pensation, or of maintaining such rate. It is proper and praiseworthy, and,
perhaps, falls within that general view of human society which perceives an
underlying law that men should unite to achieve that which each by himself can-
not achieve, or can achieve less readily."

Thus, the organization of an association or corporation for the
purpose of obtaining employment for its members, and the acts
of the corporation or its agents in accomplishing that result, as
long as such acts are confined to legal methods of solicitation, or
the promise of the support of the organization or corporation and
its members to those who employ them, are certainly not illegal.
It must also be held to be a fundamental principle of our law that
employers of labor have the absolute right to employ whom they,
please, and to refuse to employ those whose services are not agree-
able or advantageous; and so it is the right of each employé to
work for whom he pleases, and to refuse to work for any one where
either the employer or the employment is distasteful to him.    It
is not illegal either for an employer to refuse to employ individuals
who belong to a particular society, or members of a particular
corporation, or for members of a particular association or organ-
ization to refuse to work with others who are not fellow members
of the organization or corporation.    It is not, therefore, illegal for
an employer to insist upon employing members of one organization
only, nor for the employés of one employer to refuse to work for him
unless all his employés are members of one organization or corpora-
tion.    So long as an employer of labor violated no contract in dis-
charging a person employed by him, or in declining to employ a
particular individual with whom he was under no contract obliga-
tion, he was doing nothing wrongful or illegal; and for another
merely to induce him to take this course would constitute no illegal
wrong, especially when the inducement was for the purpose of pro-
curing employment for others.

This subject has received a most thorough discussion in England
in the case of Allen v. Flood, decided by the house of lords, reported
in [1898] App. Cas. 1.    It seems to me that the opinion of Lord
Herschell conclusively establishes that such an act on the part of a
person or persons seeking employment, or their representatives,

violates no legal rule, and cannot be a foundation of an action for damages.   In the course of that opinion, it is said:

"I understood it to be admitted at the bar, and it was indeed stated by one of the learned judges in the court of appeal, that it would have been perfectly lawful for all the iron workers to leave their employment, and not to accept a subsequent engagement to work in the company of the plaintiffs.   At all events, I cannot doubt that this would have been so.   I cannot doubt either that the appellant or the authorities of the union would equally have acted within his or their rights if he or they had 'called the men out.'   They were members of the union.   It was for them to determine whether they would become so or not, and whether they would follow or not follow the instructions of its authorities. though no doubt, if they had refused to obey any instructions which, under the rules of the union, it was competent for the authorities to give, they might have lost the benefits they derived from membership.   *   *   *   The members of these unions, of whichever class they are composed, act in the interest of their class. If. they resort to unlawful acts. they may be indicted or sued.   If they do not resort to unlawful acts, they are entitled to further their interests in the manner which seems to them best, and most likely to be effectual.   If, then, the men had ceased to work for the company either of their own motion or because they were 'called out,' and the company, in order to secure their return, had thought it expedient no longer to employ the plaintiffs, they could certainly have maintained no action.   Yet the damage to them would have been just the same. The employers would have been subjected to precisely the same 'coercion' and 'intimidation,' save that it was by act, and not by prospect of the act.   They would have yielded in precisely the same way to the pressure put upon them, and been actuated by the same motive, and the aim of those who exercised the pressure would have been precisely the same.   The only difference would have been the additional result that the company also might have suffered loss.   I am quite unable to conceive how the plaintiffs can. have a cause for action, because, instead of the iron workers leaving either of their own motion or because they were called out, there was an intimation beforehand that either the one or the other of these courses would be pursued.   The iron workers were employed on the terms that they might leave at the close of any day, and that, on the other hand, the employers might, if they saw fit, then discharge them.   The company had employed the men knowing that they were members of the union, and they had on one occasion, at least, dealt with the appellant as its delegate.   They had no ground for complaint if the men left, as they were by contract entitled to do, whether the men left of their own motion or followed the instruction of their union leaders.   It is said that the company were in the power of the men, because of the business loss to which the withdrawal of the men would subject them.   But to what was this due if not to the act of the company themselves in employing these men under a contract which either party might any day determine?   Under such circumstances, to compare the act of the company to that of the traveler who, on a pistol being presented to his head, hands his purse to the highwayman, appears to me grotesque.   The object which the appellant and the iron workers had in view was that they should be freed from the presence of men with whom they disliked working, or to prevent what they deemed an unfair interference with their rights by men who did not belong to their craft doing the work to which they had been trained.   Whether we approve or disapprove of such attempted trade restrictions, it was entirely within the right of the iron workers to take any steps, not unlawful, to prevent any of the work which they regarded as legitimately theirs being intrusted to other hands."

Applying this principle, with which I entirely agree, to the case at bar, no act of the defendant was proved that was either intended to or which did accomplish an injury to others, except so far as the plaintiff was injured because of the determination of his employer to substitute another workman to do the work which he was doing; and that was an injury which necessarily resulted from the success of one competitor in obtaining a contract or employment that others wished to obtain.   Simpson had conducted his business

by employing members of this union only. He always endeavored to obtain union men, and only employed nonunion men when such men were not available; and the efforts of the defendants to induce Simpson to employ a member of this union in place of Davis was not unlawful. Nor did the fact that Simpson was induced by the defendants to substitute a member of the defendant corporation in the plaintiff's place cause an injury to him which could be the foundation of any action against either the employer or those who had induced the employer to substitute one of their own members for the plaintiff.