NATIONAL PROTECTIVE ASS'N OF STEAM FITTERS & HELPERS et al.
v. CUMMING et al.

(Supreme Court, Appellate Division, First Department. July 17, 1900.)

1. JUDGMENT ON DECISION—FAILURE TO EXCEPT—EFFECT.

Under Code Civ. Proc. § 1022, providing that, whenever judgment is entered on a decision which does not state separately the facts found, the defeated party may file an exception to such decision, in which case, on appeal, the appellate division shall review all questions of fact and of law, where judgment was rendered on a decision of the trial court, and there was no separate statement of facts and no exception taken to the decision, the court, on appeal, has no power to review either the decision or the exceptions taken on the trial.

2. INJUNCTION—LABOR ORGANIZATIONS—DISMISSAL OF WORKMEN—REFUSAL TO WORK—INTERFERENCE.

Plaintiff, president of a corporation organized to supply workmen as steam fitters and helpers, on behalf of himself and fellow members sought to enjoin defendants, who were members of various labor organizations, from interfering with plaintiffs. The defendants called "walking delegates" were authorized by their respective organizations to see that none of their members worked with inferior men, and were empowered to visit buildings in the course of construction for that purpose, and in performance of their duties had demanded that a contractor dismiss members of plaintiff organization, or the members of the defendant organizations would quit work. The defendant organizations required an examination for admission, which plaintiff had failed to pass, and, in connection with others, had formed the corporation, with whose members defendants refused to work because of their low standard of admission. *Held*, that plaintiffs were not entitled to an injunction, since defendants did not infringe any of their legal rights or commit any unlawful acts.

Appeal from special term, New York county.

Suit by the National Protective Association of Steam Fitters & Helpers and Charles McQueed against James M. Cumming and others,

to restrain defendants from interfering with the members of plaintiffs' organization.   Judgment for plaintiffs, and defendants appeal. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, and INGRAHAM, JJ.

Alfred Steckler, for appellants Cumming and Duff.
Victor J. Dowling, for appellants Nugent and Mullaney.
Andrew J. Shipman, for respondents.

McLAUGHLIN, J.   This action was brought to procure a judgment perpetually enjoining and restraining the defendants, and each of them, their officers, members, and agents, from in any wise interfering with, or in any manner hindering or harassing, the work or employment of the plaintiff McQueed, or any members of the plaintiff corporation, and from coercing or obtaining, by threats, commands, strikes, or otherwise, the dismissal or discharge of such persons, or from in any wise interfering with the business of the plaintiff or any of its members.   The complaint, in substance, charged that the plaintiff association is a corporation organized under the laws of the state of New York for the purpose of supplying steam fitters and helpers; that McQueed is the president, and instituted the action in behalf of himself and all other members of the association; that the defendant O'Brien is the president of a board of delegates, an unincorporated association composed of delegates of various labor organizations; that the defendant Duff is the treasurer, and the defendant Cumming the walking delegate, of the defendant Enterprise Association, an unincorporated association composed of steam fitters; that the defendant Mullaney is the treasurer, and the defendant Nugent is the walking delegate, of the Progress Association, an unincorporated association composed of steam fitters' helpers; that the members of both the Enterprise and Progress Associations are "banded together, chiefly to secure employment in said trade or work for their members, and to prevent other persons of the same trade, not members of the said associations, from procuring or retaining such employment, and the officials of said associations usually charged.therewith are the said walking delegates, and they, together with all the other like delegates duly elected from other trades unions and labor organizations, make up the said board of delegates"; that the defendants Cumming and Nugent, as such walking delegates, are empowered by their respective associations to visit buildings in the course of erection, wherein steam fitting and steam work are being done, and to ascertain if any persons are engaged on such work who are not members of their respective associations, and, if they find such persons are engaged, then, in their discretion, to demand that such persons be discharged by their employers; that the by-laws, rules, and regulations of such associations, and of the other labor organizations whose representatives act with them and compose the board of delegates, require that the members of such organizations give prompt and implicit obedience to the demands of the walking delegates; that on or about the 14th of February, 1898, certain members of the plaintiff corporation were em-

ployed by one William E. Roys in doing some work for him in the city of New York, and, while they were thus employed, the defendants Cumming and Nugent, acting for and representing their organizations, unlawfully conspired and combined with the other officers and members of the Enterprise and Progress Associations and the other members of the board of delegates with the intent and for the purpose of injuring the plaintiff and its members and depriving them of their employment and business, and threatened that, if said Roys did not discharge the members of the plaintiff, the members of the defendant organizations would order and compel the other laborers employed by him to strike and withdraw from the work in which they were engaged, and thereby hinder, delay, and embarrass him by stopping work on his buildings then in the course of erection, to his great loss and damage, etc.; and that by reason of such threats Roys did discharge the members of the plaintiff organization, to their great loss and damage. The complaint also contains similar allegations as to two other jobs, designated as the "J. B. Smith job" and the "George A. Pratt job." Cumming and the Enterprise Association, Nugent and the Progress Association, and O'Brien, as the president of the board of delegates, interposed separate answers, denying substantially all the material allegations of the complaint. The issue thus formed by the complaint and the respective answers came on for trial before the court at special term, where a decision was rendered awarding to the plaintiffs substantially all the relief demanded in the complaint. Judgment was thereafter entered in accordance with the decision, from which Cumming and the Enterprise Association and Nugent and the Progress Association have appealed.

It is unnecessary to consider the appeal taken by Nugent and the Progress Association, since no exception was taken by either of them to the decision of the court. The decision rendered was the one provided for in section 1022 of the Code of Civil Procedure, and, inasmuch as no exception was taken to it as required by that section, this court has no power to review either the decision of the court or any of the exceptions taken upon the trial. Goldstein v. Guedalia, 40 App. Div. 451, 58 N. Y. Supp. 167; Van Vleck v. Ballou, 40 App. Div. 489, 58 N. Y. Supp. 125; Thompson v. Schwartz, 39 App. Div. 658, 57 N. Y. Supp. 416; Stiefel v. Novelty Co., 12 App. Div. 266, 42 N. Y. Supp. 511; Murphy v. Reddy, 19 App. Div. 630, 46 N. Y. Supp. 457. The judgment, therefore, so far as it relates to the Progress Association and its walking delegate, must be affirmed, with costs. The defendant O'Brien did not appeal. Therefore, the only question presented is the one raised by the appeal taken by the Enterprise Association and its walking delegate, Cumming.

From the evidence offered upon the trial it appears that the object to be accomplished by the Enterprise Association is "to encourage a higher standard of skill in the craft, and provide the trade with a better class of workmen; to raise and keep up the standard of wages; to assist each other to secure employment; to reduce the hours of daily labor; to furnish aid in case of death; and by all legal and proper means to advance the moral, intellectual, financial, and social condition of all members"; and the duty of the walking delegate is

to see, among other things, that "no member works with nonunion men"; that, before a person can become a member of the association, he must first submit to and pass the examination required by the association, and pay an admission fee; that the defendant Cumming, when he first applied to become a member, was subjected to this examination, which he failed to pass, and was refused admission, but subsequently succeeded in passing the examination, and thereupon became a member of the association; that the plaintiff McQueed sought to join said association, but was unable to pass the required examination, and he thereupon, in connection with others, organized the plaintiff association; that the Enterprise Association refused to permit its members to work upon any job where the members of the plaintiff were employed, and informed the employer in each instance that, unless the members of the plaintiff were discharged, they would strike, or, in other words, abandon the job, which they did or threatened to do in the three instances specified in the complaint; that they neither used force nor did anything tending to a breach of the peace, other than that included in the threat to order a strike or withdraw its members, as well as the members of the other associations allied with it, from the work on which they were engaged. This is all the evidence shows when it is carefully considered; and the sole question presented is whether or not such acts constitute, in law, a wrong for which the plaintiff and its members are entitled to the relief demanded, or any relief. It cannot be seriously questioned but that every workman has the right, in the first instance, to say for whom and with whom he will work. This right is guarantied to every person of legal age and competent to contract, under our laws. An employer has the absolute right to say whom he will employ, and the employé has the right to say by whom he will be employed and with whom he will work. The right is reciprocal, and, once that right is destroyed, personal liberty is destroyed, and chaos reigns. And, if one has this right, acting in his individual capacity, he does not lose it when acting with others, clothed with an equal right; so that employers may combine, and say they will not employ persons who are members of labor organizations, and laborers may combine, and say they will not work for employers who engage any but members of labor organizations. Here, the question, it is true, is not between the employed and the employer, but between two rival labor organizations, but the principle which is sought to be invoked is the same as that which relates to and governs the relation between the employed on the one side and the employer on the other. As already indicated, the only complaint made against the Enterprise Association and its walking delegate, Cumming, as set out in this record, is that the members of that organization refused to work with the members of the plaintiff organization, and that they threatened to quit and abandon the work on which they were engaged, in each instance, unless the members of the plaintiff organization were discharged, and by reason of that threat they were discharged, and their places filled by members of the Enterprise Association. It cannot be questioned but that one may, by lawful means, obtain employment either for himself or another. He may procure the discharge, by lawful means, of another person, in order that he

may obtain employment, either for himself or another. This is all that the Enterprise Association did. It was seeking to obtain employment for its own members, and, wherever it found places filled by members of the plaintiff association, it procured their discharge, in order that the employment might be given to members of the Enterprise Association, and, in case that was not done, they either withdrew, or threatened to withdraw, from the work. The case, therefore, is brought directly within the principle laid down in the celebrated case of Allen v. Flood [1898] App. Cas. 1.

In Allen v. Flood, supra, the plaintiffs were shipwrights and members of a trades union called the "Shipwrights' Providence Union," and employed by the Glengall Iron Company upon the repairs of a certain ship. The Glengall Iron Company had also engaged, for the ironwork upon the ship, members of a trades union called the "United Society of Boiler Makers & Iron Shipbuilders." A dispute arose between the two labor associations as to the right of the shipwrights to do ironwork, and the members of the boiler makers communicated with their organization, whereupon one of its representatives had an interview with the Glengall Iron Company, and informed it that, unless the members of the Shipwrights' Association were discharged, the boiler makers would strike,—that they would not work with the shipbuilders,—and by means of such threat the iron company discharged the shipwrights, who brought an action to recover the damages sustained by reason thereof. They had a judgment, which was affirmed by the court of appeals, but reversed in the house of lords, and during the course of the opinion delivered by Lord Watson he said:

"It is, in my opinion, the absolute right of every workman to exercise his own option with regard to the person in whose society he will agree or continue to work. It may be deplorable that feelings of rivalry between different associations of workingmen should ever run so high as to make members of one union seriously object to continue their labor in company with members of another trade union, but so long as they commit no legal wrong, and use no means which are illegal, they are at perfect liberty to act upon their own views."

And Lord Herschell, in delivering an opinion in the same case, after reviewing very many authorities bearing upon the subject, reached the same conclusion that Lord Watson reached, and said:

"I understood it to be admitted at the bar * * * that it would have been perfectly lawful for all the iron workers to leave their employment, and not to accept a subsequent engagement to work in the company of the plaintiffs. At all events, I cannot doubt that this would have been so. I cannot doubt, either, that the appellant, or the authorities of the union, would equally have acted within his or their right, if he or they had 'called the men out.' They were members of the union. It was for them to determine whether they would become so or not, and whether they would follow, or not, the instructions of its authorities, though no doubt, if they had refused to obey any instructions which, under the rules of the union, it was competent for the authorities to give, they might have lost the benefits they derived from membership. * * * The members of these unions, of whatever class they are composed, act in the interest of their class. If they resort to unlawful acts, they may be indicted or sued. If they do not resort to unlawful acts, they are entitled to further their interests in the manner which seems to them best and most likely to be effectual. If, then, the men had ceased to work for the company, either of their own notion or because they were 'called out,' and the company, in order to secure their return, had thought it expedient no longer to employ

the plaintiffs, they could certainly have maintained no action. Yet the damage to them would have been just the same. The employer would have been subjected to precisely the same 'coercion' and 'intimidation,' save that it was by the act, and not by the prospect of the act. They would have yielded in precisely the same way to the pressure put upon them, and been actuated by the same motive, and the aim of those who exercised the pressure would have been precisely the same. The only difference would have been the additional result that the company also might have suffered loss. I am quite unable to conceive how the plaintiff can have a cause of action, because, instead of the iron workers leaving, either of their own notion or because they were 'called out,' there was an intimation beforehand that either the one or the other of these courses would be pursued. * * * They had no ground for complaint, if the men left, as they were by contract entitled to do, whether the men left of their own motion or followed the instructions of their union leaders. It is said that the company were in the power of the men, because of the business loss to which the withdrawal of the men would subject them. But to what was this due, if not to the act of the company themselves in employing these men under a contract which either party might at any day determine? * * * The object which the appellant and the iron workers had in view was that they should be freed from the presence of men with whom they disliked working, or to prevent what they deemed an unfair interference with their rights by men who did not belong to their craft, doing the work to which they had been trained. Whether we approve or disapprove of such attempted trade restrictions, it was entirely within the right of the iron workers to take any steps, not unlawful, to prevent any of the work, which they regarded as legitimately theirs, being intrusted to other hands."

In the recent case of Davis v. Hoisting Engineers, 28 App. Div. 396, 51 N. Y. Supp. 180, Mr. Justice Ingraham, referring to the case of Allen v. Flood, said:

"The organization of an association or corporation for the purpose of obtaining employment for its members, and the acts of the corporation or its agents in accomplishing that result, as long as such acts are confined to legal methods of solicitation, or the promise of the support of the organization or corporation and its members to those who employ them, are certainly not illegal. It must always be held to be a fundamental principle of our law that employers of labor have the absolute right to employ whom they please, and to refuse to employ those whose services are not agreeable or advantageous, and so it is the right of each employé to work for whom he pleases, and to refuse to work for any one where either the employer or the employment is distasteful to him. It is not illegal for an employer to refuse to employ individuals who belong to a particular society or members of a particular corporation, or for members of a particular association or organization to refuse to work with others who are not fellow members of the organization or corporation. It is not, therefore, illegal for an employer to insist upon employing members of one organization only, nor for the employés of one employer to refuse to work for him unless all his employés are members of one organization or corporation."

Here, as we have already said, all that the Enterprise Association did, acting through its representative, Cumming, was to refuse to work with members of the plaintiff organization, and to insist upon their discharge, and, in case that was not done, to withdraw from the work, or order a strike of their members on that particular job; and, applying the principle laid down in Allen v. Flood, and Davis v. Hoisting Engineers, it must be held, it seems to us, that they had a legal right to do just what they did; and in reaching this conclusion the case of Curran v. Galen, 152 N. Y. 33, 46 N. E. 297, 37 L. R. A. 802, has not escaped our attention. In that case the decision was based upon a demurrer to an answer interposed to the complaint.

The allegations of the complaint were that certain members of a labor organization threatened the plaintiff that unless he would join the organization, pay the initiation fee, and subject himself to its rules and regulations, they and the association would obtain his discharge from the employment which he then had, and make it impossible for him to obtain employment in the city of Rochester or elsewhere, until he became a member of such association; and that in pursuance of that conspiracy, upon plaintiff's refusing to become a member of the said association, the said members and the association procured the plaintiff's discharge, by reason of false and malicious reports in regard to him, by which they sought to bring him into ill repute with members of his trade and employers, and to prevent him from prosecuting his trade and earning a livelihood. The bare statement of the issue there involved is sufficient to show the distinction between that case and this. Here, the Enterprise Association and its members neither did nor threatened to do anything to prevent the members of the plaintiff organization obtaining work at any place except where its members were employed.

The judgment, therefore, so far as the same relates to or affects the defendant Cumming and the Enterprise Association, must be reversed, and a new trial ordered, with costs to the appellant to abide the event, and affirmed, with costs, so far as the same relates to or affects the defendant Nugent and the Progress Association. All concur.

INGRAHAM, J. I concur with Mr. Justice McLAUGHLIN in a reversal of this judgment. I had occasion to express my views on this question in the case of Davis v. Hoisting Engineers, 28 App. Div. 400, 51 N. Y. Supp. 180, and, upon the principle there stated, it follows that in this case the plaintiffs are not entitled to any relief. This action is founded upon an alleged illegal combination or conspiracy, and it seems to me that the crucial question in such an action must be whether the acts of the defendants were illegal. It certainly must follow that, if it is lawful for an individual to do a certain act, it is lawful for him to combine with others in the same situation to do the same act. It is the illegality of the purpose to be accomplished, or of the means used to accomplish that purpose, that makes a combination illegal. Nor can it be that the fact that the purpose, when accomplished, will cause an injury, makes the action of those engaged illegal. All competition in trade or business tends necessarily to reduce the profits of those engaged in that business, but it would not be claimed that a combination having for its object competition in business would be illegal. As I understand it, the right of an employer to select his employés, and the right of the employé to select his employer, is one that is not only recognized by law, but is a right that is essential to the liberty of the individual, and any consideration that would restrict that right would be illegal. But there is also the right of each individual to pursue his lawful trade or calling, and any combination which would have for its object the restriction of that right would be opposed to the spirit of our institutions and against public policy. If the individual has the right to choose his employer without regard to his motive or reason for making the choice, he cer-

tainly has the right to combine with others having the same interest that he has, and such a combination would not be illegal. On the other hand, no individual has the right to prevent another individual from earning his livelihood, and for several to combine for such a purpose would be an illegal combination, that would justify an interference by the court. As was said by the court of appeals in Curran v. Galen, 152 N. Y. 36, 46 N. E. 298, 37 L. R. A. 804:

"Public policy and the interests of society favor the utmost freedom in the citizen to pursue his lawful trade or calling, and if the purpose of an organization or combination of workingmen be to hamper or to restrict that freedom, and, through contracts or arrangements with employers, to coerce other workingmen to become members of the organization and to come under its rules and conditions, under the penalty of the loss of their position and of deprivation of employment, then that purpose seems clearly unlawful, and militates against the spirit of our government and the nature of our institutions. The effectuation of such a purpose would conflict with that principle of public policy which prohibits monopolies and exclusive privileges."

We have, therefore, to look at the object sought to be attained by this defendant association, and to determine whether the purpose sought to be accomplished, or the means used to accomplish that purpose, can be said to come within this condemnation. The constitution and by-laws of the Enterprise Association, of which the defendant Cumming was the walking delegate, disclosed no illegal or unlawful purpose, but, on the contrary, a praiseworthy one, having for its object the elevation of its members, the encouragement of a higher standard of skill in the craft, providing the trade with a better class of workmen, "and by all legal and proper means to advance and elevate the moral, intellectual, financial, and social conditions of all members." But, however worthy the aims of the association, they had no right to use illegal means to accomplish their object. The individual plaintiff claims that the defendant association refused to allow him to become a member. The association had established a standard of skill in the trade to which its members belonged. Each applicant for membership was required to pass an examination to show that he was qualified as a mechanic. The individual plaintiff in this action sought such membership, and, after an examination, was refused admittance as a member of the association. There is nothing to show that there was bad faith in this refusal, and the evidence that the individual plaintiff was rejected because he failed to pass the examination strongly preponderates. There certainly was no right of action against either the association or its representatives because of the refusal to allow the plaintiff to become a member. Nor does the fact that Cumming, as an officer of this association, induced employers to discharge the individual plaintiff and other members of the plaintiff corporation from their employ, and to employ members of defendant association in their place, by threats of ordering a strike if that demand was not complied with, prove an illegal combination entitling plaintiff to relief. I agree with Judge McLAUGHLIN that a fair consideration of this testimony shows that all that Cumming did was to say to employers that, if any other than members of the defendant association were employed, the members of the association would refuse longer to work with such employer. The substantial statement that was made was

that the members of the defendant association would refuse to work for an employer unless members of their association were exclusively employed. Thus, Mr. Baily testified that he employed the plaintiff and a helper, and that Cumming came to him and told him that he would have to take his steam fitters off; that, if he did not, "he would strike the job. *   *   * He told me I could not have the National Association men on that job;" that he would strike the job; "general strike of the whole building;" and that, in consequence of that statement, Baily discharged the individual plaintiff and his helper. Cumming appears to have been backed up by representatives of other labor organizations that were in sympathy with the defendant association. This is nothing more than a statement by the representative of this defendant association that its members would refuse to work for an employer who employed the plaintiff or others who were members of the plaintiff's corporation. Yet it would seem quite clear that this was nothing more than Cumming had a right to do. The members of the defendant association had the absolute right to refuse to work for Mr. Baily without assigning any reason, and the association could authorize its officers to say upon what terms its members would work for him; and if Cumming, as the representative of this association, stated the condition upon which members of the association should work for Baily, and Baily refused to accede to those terms, it was not illegal for him to advise the members of the association of which he was an officer, or the members of other associations in sympathy with his, to refuse to continue in Baily's employ. Thus, neither Cumming, as an officer of the defendant association, the association itself, nor the individual members of the association committed an illegal act for which it or they were liable for damages, or from the performance of which they should be enjoined, by stating to employers of labor that members of that association would refuse to work, or would leave work if other than their members were employed. We have also evidence of threats made by Cumming and other representatives of this defendant association to the plaintiff, that they would not allow the individual plaintiff or members of the plaintiff corporation to work in New York City unless they became members of the defendant association. Undoubtedly, it would have been illegal for Cumming to attempt to prevent the individual plaintiff or others from obtaining work without joining his association. If that had been the purpose, and if that purpose had been accomplished, the plaintiff would have had a cause of action against those united in its accomplishment; but a fair consideration of this testimony, I think, shows that there was no combination to prevent the individual plaintiff or the other members of the plaintiff corporation from obtaining work, nor was that the object sought to be accomplished, except so far as was necessary to procure and retain work for members of this defendant association. The members of this association had a right to obtain work if possible, although it resulted in leaving the plaintiff and the members of the plaintiff corporation without work. They had a right to insist upon the superior attainments of the members of their association, and that its members were better workmen than the members of the plaintiff corporation, and that therefore they should be preferred;

and as long as their acts tended merely to obtain employment for themselves, even though it was at the expense of the plaintiff and his associates, no legal wrong was committed. Yet this is all that I can see, after a careful examination of this testimony, that these defendants did. They insisted that their men should be employed; stated that their men would not work with the individual plaintiff or members of the plaintiff corporation, and that, unless the members of the plaintiff corporation were discharged, their men would leave work. That, I believe, the defendants had a perfect right to insist on. In doing so they committed no illegal act, and the court below was not justified in enjoining them from continuing to do that which they had a legal right to do. I concur in the reversal of the judgment.