NEW YORK CENTRAL IRON WORKS CO. v. BRENNAN et al.

(Supreme Court, Special Term, Ontario County.   July, 1907.)

**1.** INJUNCTION—PRELIMINARY INJUNCTION—DISCRETION OF COURT.

On application for a preliminary injunction in an action to restrain striking employés and local lodges of labor unions from interfering with complainant's business, the entire evidence by which it is expected to sustain the cause of action need not be presented to the court; but it is only essential to present sufficient evidence of wrongful acts by defendants, so that the court may be judicially satisfied that the allegations of the complaint are true.

**2.** SAME—SUBJECTS OF PROSECUTION—INTERFERENCE WITH BUSINESS.

The business of a manufacturing corporation, lawfully conducted, is a property right, and equity will enjoin the carrying out of a conspiracy to destroy or injure it, though such acts may be criminally prosecuted.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 27, Injunction, § 177.]

**3.** SAME.

Striking employés and local lodges of labor unions will be restrained from congregating about or near their former employer's place of business, or in other places, for the purpose of interfering with the employés in the service of such employer, or those desiring to enter its service, from attempting, by means of threats, intimidation, or personal violence to induce employés in the employer's service to quit the same, or prevent others from entering it, and from maintaining a system of picketing for that purpose, all of which is done with the intent to cripple the employer's business and embarrass it in the prosecution thereof, and to compel it to accede to the demands of the striking employés.

Action by the New York Central Iron Works Company against Michael M. Brennan and others.   On motion by defendants to dissolve a temporary injunction.   Motion denied.

Charles A. Hawley, for plaintiff.
P. H. Leahy, for defendants.

CLARKE, J.   This action was commenced to restrain the defendants, including Lodge No. 188 of the International Brotherhood of Boilermakers, Iron Ship Builders & Helpers of America from interfering with the business attempted to be conducted by the plaintiff at the city of Geneva, Ontario county, N. Y.   On the 23d day of May, 1907, a preliminary injunction was issued out of this court, which restrained the defendants, and all persons combining and conspiring with them, from in any way, by threats, intimidation, or force, interfering with the employés of the plaintiff, or with its officers or agents, and restrained them from interfering with any person or persons who might desire to enter or continue in the employ of the plaintiff, by means of threats, intimidation, or vexatious or unlawful organized espionage, personal violence, or other vexatious or unlawful means calculated or intended to prevent such person or persons from entering or continuing in the employment of the plaintiff, or calculated or intended to induce any person employed by the plaintiff to leave its employment, and from congregating or loitering about or near the neighborhood of the plaintiff's factory or works, or in any other places, with intent to interfere with the employés of the plaintiff, or to so interfere with the prosecution of the plaintiff's business, or to so interfere with or obstruct in any

manner the business or trade of the plaintiff, and various other acts of a character which would be injurious, or which would be calculated to be injurious to the plaintiff's business, as will more fully appear by an examination of said injunction.

The complaint, which is very voluminous, contains the allegations, among others, that the plaintiff is a domestic corporation, doing business at Geneva, N. Y., and maintains a large manufacturing plant at that city; that its shops are situated in said city, near the tracks and station of the New York Central Railroad Company; that on or about the 1st day of March, 1907, 13 of its employés, who were boilermakers, and 10 of its employés, who were helpers to boilermakers, struck and quit the plaintiff's employ, and that the said boilermakers were each one of them members of Lodge No. 188 of the International Brotherhood of Boilermakers, etc., which is an unincorporated association, consisting of more than seven persons, of which the defendant Patrick Clements is and was president, and that Lodge No. 149 of the Iron Molders' Union is located at Geneva, N. Y., and that there is also located at said city a teamster's union and various other labor unions, and an organization known as the Federation of Labor, of which the defendant Michael F. Tracy is the secretary and business manager, and that many of the defendants are members of one or more of these organizations. The complaint further alleges that up to the time of the said strike the plaintiff had about 70 employés upon its premises; that it has large amounts of orders to be filled and work on hand to be done, which it can fill and do if not interfered with; that several of the individual defendants were and are members of the said lodges Nos. 188 and 149, above referred to, and that each of said lodges has other members than those who are made defendants, and that each of them is an organized or voluntary association of the members thereof, whose proceedings are kept secret; that about March 1, 1907, besides the 13 boilermakers, employés of the plaintiff, who went on a strike, the next day 4 more employés quit the employ of plaintiff, and on March 5th another employé in the boilermaking department quit the employ of the plaintiff, and that on the same day 3 molders and 2 helpers to molders quit the employ of the plaintiff, they being members of Lodge No. 149, and that all of said employés went out from the plaintiff's employ upon a strike; that since the said 5th day of March, 1907, and down to the time of the commencement of this action, the defendants have interfered with the prosecution of the plaintiff's business and the doing of its work by its employés, and have compelled its employés to cease work for the plaintiff, and have prevented other persons who so desired from entering the employ of the plaintiff, and have enticed away some of the servants of the plaintiff, and that from time to time since March 5, 1907, the defendants have threatened employés of the plaintiff with personal violence if they did not leave the employ of the plaintiff, and have sought by threats and threatening conduct to intimidate plaintiff's employés and oblige them to leave the service of the plaintiff, and in some cases have succeeded, and have threatened and annoyed the keepers of the boarding houses who boarded employés of the plaintiff, and by said acts have seriously interfered with the business of the plaintiff in the operation of its factory.

The complaint further sets forth that the defendants have combined, with the object and intent by force, threats, and intimidation of the boarding house keepers of said employés, and by force, threats, and intimidation against and organized espionage of employés remaining in plaintiff's service, to compel said employés to quit the service of the plaintiff, and by said means to prevent those desiring to work for the plaintiff from taking and pursuing such employment, all of which acts are done with the intent of said defendants to cripple the business of the plaintiff, to embarrass it in the prosecution of its business, and to compel the employés of the plaintiff to quit its employ, and, further, that the defendants are in combination to prevent by force, threats, and intimidation the employment of such men as are desired by the plaintiff and necessary in the conduct of its business, and by such means have actually obstructed the control and management of its business, and prevented the plaintiff from employing such persons as desired to work for it, and to a large extent have interfered with and crippled and diminished its business, and that defendants have picketed plaintiff's works and plant and other places in the neighborhood, to prevent workingmen desiring to work for the plaintiff from doing so and pursuing such employment, and thereby unlawfully to injure and obstruct and damage the property of the plaintiff and to prevent the plaintiff from employing or keeping at work such workmen as desire to work for it; that in pursuance of said combination and conspiracy the said Lodge No. 188 and the individual defendants herein, and their associates and confederates, have wrongfully and unlawfully, in pursuance of their wrongful and unlawful conspiracy and confederation, congregated at and near the approaches to the plant and shops of the plaintiff, and when the men employed by the plaintiff, who desired to continue and remain in plaintiff's employ, were coming to and leaving their work, and also upon the public streets of the city of Geneva, have accosted them and followed them, and have abused them by offensive epithets, calling them "scabs," and have also threatened and attempted by violence and force to intimidate them and compel them to quit the employment of the plaintiff, and have continually picketed the plaintiff's factory and premises, and have threatened the employés of the plaintiff with bodily harm, put them in fear of the same, and have told them, as they went to their work in the plaintiff's shops, that if they went in there they were going to their death, and have actually assaulted one or more of plaintiff's employés, and have caused same to break their contract with the plaintiff and quit its employment, and have threatened to boycott one or more of them and to boycott the plaintiff, and all of said defendants have threatened to continue to picket the factory and plant of the plaintiff, and to use force, threats, and violence and intimidation in seeking to prevent men who were willing to work for plaintiff from doing so; that since the said 5th day of March, 1907, the plaintiff has endeavored to carry on its business and employ other men to fill the places of the defendants who have left its employ, and to a large extent with success, and would have no difficulty in doing so if it were not for the acts and conduct of the defendants, all of which acts of the defendants, as above outlined, are of great and irreparable damage to the plaintiff.

It is further shown by the affidavits that the plaintiff, shortly after the strike, began to keep a careful record of the movements and doings of the defendants, or some of them, and that from the 5th of March, 1907, down to the date of the granting of the injunction here sought to be dissolved, the defendants or some of them were constantly on picket duty in and about the plaintiff's property, and that during that time committees made up of the defendants, or some of them, met trains, and almost every train, day and night, as it would arrive in the city of Geneva, and intercepted strangers as they would alight from such trains, with the purpose and intent, if there were any among them who were seeking employment from this plaintiff, to induce them by various means, by coaxing and threats, not to enter the employ of the plaintiffs; and it is shown, not only by the affidavits, but by photographs of defendants who were identified, that they were actually engaged in this kind of work and engaged in picketing the property of the plaintiff and the surrounding property, prior to the granting of this injunction.

The defendants move upon a large number of affidavits to dissolve this injunction. It is claimed by the learned counsel for the defendants that the injunction was improvidently granted in the first place, because, as it is claimed, the affidavits upon which it was granted were insufficient, stating merely conclusions, and not facts. A very careful examination of the papers upon which the injunction was granted convinces me that counsel for the defendants is in error in that assumption. While it is perhaps true that in some instances conclusions are stated, there was ample evidence presented to the court at the time of the granting of this injunction, not only by the verified complaint, but by the supporting affidavits, setting forth facts which amply warranted the issuing of the injunction. It was not necessary for the plaintiff to present to the court on the application for the preliminary injunction the entire evidence by which it expected to sustain its cause of action. All that it was necessary to do was for the plaintiff to present sufficient facts showing wrongful acts on the part of the defendants, so that the court could be judicially satisfied that the allegations were true, and it was a proper subject for the restraining order, and the affidavits presented on the application for this injunction were of such a character, and disclosed such a state of facts that any judge who took the pains to examine them could not fail to be judicially satisfied that the plaintiff was, for the time being at least, entitled to the relief demanded.

The answers of the various defendants are somewhat peculiar. They admit the incorporation of the plaintiff; but, so far as any of the overt acts as charged in the complaint are concerned, the defendants in each instance, so far as my attention has been called to the answers, deny any knowledge or information sufficient to form a belief with reference to the charges, as stated in the complaint. But when it came to the argument of this motion these same defendants, who by their answers said that they had not sufficient knowledge or information to form a belief as to the acts charged against them in the complaint, were ready with very emphatic answers in their affidavits by each person, claiming to know all about the matters, and they deny all wrongdoing. I am satisfied from a careful reading of all the papers in this case that the difficulty began with the strike of the defendants. There was not a lock-

out in the ordinary acceptation of the term. The defendants moved first and moved out, and the plaintiff took the position that if they did not return by a certain time their places would be filled. So the plaintiff was not the aggressor. It did not lock the defendants out in the first instance. They struck and left the plaintiff's employ. There is where the trouble began. Nobody will question the right of the defendants to strike. After they had done so, the plaintiff had an equal right to lock them out, and to employ others to take their places, provided such others could be found; and when the plaintiff succeeded in finding other men to take the places of these defendants, who had left its employ, these new men must be protected in their undoubted right to sell their labor to a corporation or a party who was willing to employ them and pay for their services. It would be a startling proposition to say that men who are willing to work for the wages paid by this plaintiff should not be protected in the right to work for whomsoever they please, provided they can get the employment. That is one of the rights of an American citizen, which it is the business of the courts to strictly uphold and protect.

The business of this plaintiff, when it is conducted according to law, is a property right, and any unlawful interference with or interruption of that business is an injury to a property right, and a court of equity has jurisdiction to restrain by injunction the carrying out of any conspiracy to destroy or injure such property, and the court is not deprived of this power because of the fact that the acts are criminal and could be prosecuted criminally. Davis v. Zimmerman, 91 Hun, 489, 36 N. Y. Supp. 303. The plaintiff owned its plant and had a right to conduct its business, and its right to protection in the lawful operation of its business is a constitutional right, both under the Constitution and that of the state of New York, and it is, the duty of courts to protect it in these rights, whether or not the defendants could be prosecuted criminally. · Crawford v. Tyrrell, 128 N. Y. 341, 28 N. E. 514; In the Matter of Debs, 158 U. S. 564, 15 Sup. Ct. 900, 39 L. Ed. 1092. I am satisfied from all the affidavits that the defendants conspired together to injure the plaintiff's business, not only by threats made against those who were willing to work for the plaintiff, but by intimidation and threats, and in one or two instances by personal violence, preventing persons from entering or remaining in plaintiff's employment; and such acts are criminal, because they constitute a conspiracy. Pen. Code, § 168; People v. Melvin et al., Yates' Sel. Cas. 112.

It is urged by the learned counsel for the defendants that there is no authority in this state for the relief demanded in the complaint. · In view of the facts established by the papers before me of the acts of the defendants in conspiring to prevent the plaintiff from carrying on its business, and by means of threats and intimidation, and in some instances personal violence, endeavoring to prevent men who are willing to work from entering plaintiff's employment, if there is no law in this state to authorize a court to interfere and prevent people through such conspiracy and combinations from interfering with a party who wishes to conduct his business in a lawful way, then it is high time there was such authority, and this appears to be a good case in which to follow the

numerous authorities of other states, which have uniformly held that injunctions similar to the one sought to be dissolved here can be issued, upheld and enforced. In re Debs, 158 U. S. 564, 15 Sup. Ct. 900, 39 L. Ed. 1092; Casey v. Cincinnati, etc., 45 Fed. 135, 12 L. R. A. 193; Geo. Jonas Glass Co. v. Glass Bottle Blowers' Ass'n, 66 Atl. 953. The defendants do not deny that some of their number were in and about plaintiff's premises on many occasions, when men employed by the plaintiff were going to and from their work, and that they did endeavor to persuade them to leave the employment of the plaintiff; but it is claimed in behalf of the defendants that they had a perfect right to do this, that they made no threats, but that they were there simply as citizens, and undertook to coax the men who were working for plaintiff to leave its employment. But the evidence is clear enough that there was a well organized and concerted method in what the defendants did in meeting incoming trains and constantly picketing the premises of the plaintiff, and on many occasions using insulting, profane, and opprobrious language to and at plaintiff's employés, telling them that they were "scabs" and warning them, if they entered plaintiff's works, that they were going to their death. These instances were not uncommon, and how can it be claimed in this country that men on a strike have any lawful business to picket the property of their old employer, and by means of intimidation and threats that they were going to their death if they went into the plaintiff's plant to work, by such means attempt to keep men from working for the plaintiff, and thus not only deprive them of their right to work for whom they please, but also deprive the plaintiff of the right to conduct its business in its own way.

It is, of course, true that men have a right to strike, and they have a right to co-operate together for the purpose of obtaining increased wages, and organization and co-operation of men is not against public policy; but it is to be commended when their purposes are legitimate and lawful. Curren v. Galen, 152 N. Y. 33, 46 N. E. 297, 37 L. R. A. 802, 57 Am. St. Rep. 496. But, while they have that absolute right, other men who are willing to work have an equal right to pursue their labors unmolested, and the plaintiff has just that same right to employ whomsoever it pleases, provided it can get men to enter such employment, and this right cannot be interfered with by threats, intimidation, or coercion by defendants whether they act singly or as a result of combination or conspiracy. But in this case the evidence points unmistakably to the fact that the purpose of the defendants was not by peaceful persuasion to endeavor to prevent men from entering the employment of the plaintiff; but, on the other hand, it seems as though the defendants took the course they did, and by the means complained of, to compel the plaintiff to accede to their demands or else destroy its business, and in doing that they exceeded their rights, even under the decisions of this state. Coons v. Chrystie, 24 Misc. Rep. 296, 53 N. Y. Supp. 668; Matthews v. Shankland, 25 Misc. Rep. 604, 56 N. Y. Supp. 123; Davis v. Engineers, etc., 28 App. Div. 396, 51 N. Y. Supp. 180; Sun Printing Association v. Delaney, 48 App. Div. 623, 62 N. Y. Supp. 750; Davis v. Zimmerman, 91 Hun, 489, 36 N. Y. Supp. 303.

The cases holding that picketing the property of an employer for the purpose of preventing men from entering his employment are numer-

ous; but it is not necessary to go beyond our own immediate locality to find ample authority for holding that acts similar to those charged against the defendants here can be restrained by injunction. Davis Machine Co. v. Robinson, 41 Misc. Rep. 323, 84 N. Y. Supp. 837. That was a motion to dissolve an injunction. The defendants concededly had pickets stationed at the plaintiff's factory, and endeavored by various means to prevent men who were willing to work for the Davis Machine Company from doing so, and the acts described in the Davis Machine Company Case are strikingly similar to the acts charged against the defendants here; for here, as in that case, men were picketing the plaintiff's premises, and, as its employés who had taken the places of the defendants who were on picket duty were going to and from their work, would call them "scabs" and reproach them for working for the plaintiff, thus depriving them (the defendants) of their bread, and threatening them with death if they entered plaintiff's building. Mr. Justice Nash, in denying the motion to dissolve the injunction in that case, used this significant language:

"It has not yet been held by the courts of our state, and I am not prepared to hold, that a business carried on in a lawful way may be so interfered with, merely because its owner refuses the dictation of a labor union as to the method in which the business shall be conducted or carried on."

It is not necessary to go beyond that decision to get authority which is sufficient here, and it is in line with numerous decisions in other states. When men combine and confederate in an endeavor to get an increase of wages, and conduct themselves in a peaceful and orderly manner, they are acting well within their rights, and they should be commended, and there is no difference of opinion in the assertion that labor unions are proper and legitimate and should be upheld in every right endeavor; but when combinations amount to a conspiracy, as in this case, and have for their principal object the destruction of the business of a former employer, because he will not accede to their demands, such actions cannot be upheld, for it would destroy a very sacred right of American citizenship—the right of an employer to employ whomsoever is willing to work for him without outside dictation, and the right of a laborer to sell his labor to such party and at such price and upon such terms as he chooses. Such rights of employer and laborer, it seems to me, the papers in this case clearly show these defendants unlawfully and by conspiring together attempted to interfere with and destroy. If that was not their purpose, then this injunction can do them no harm. If it was their purpose, then the continuing of the injunction will prevent them from doing the plaintiff any harm. In any event I am convinced that the injunction was properly granted, and ample evidence has been adduced here to show that it should be continued.

Motion to dissolve the injunction is therefore denied, with $10 costs.