(159 App. Div. 464.)

### PEOPLE v. DAVIS et al.

(Supreme Court, Appellate Division, Second Department. November 21, 1913.)

CONSPIRACY (§ 43*)—PREVENTING EXERCISE OF LAWFUL TRADE OR CALLING—INDICTMENT.

    Penal Law (Consol. Laws 1909, c. 40) § 580, subd. 5, provides that conspiracy may consist of an agreement to prevent another from exercising a lawful trade or by force or threats, or by interfering or threatening to interfere with property belonging to another, or with the use thereof. Section 583 declares that no agreement except to commit a felony on the person of another, or to commit arson or burglary, amounts to a conspiracy, unless some act beside the agreement be done to effect the object thereof. *Held*, that an indictment charging that at least three persons conspired to prevent L. from exercising the trade of a horseshoer by threatening his customers to cause strikes on work on which their horses were used unless they refrained and refused to have their horses shod by L., alleging the overt acts to consist in threats to the customers to cause such strikes, sufficiently charged a conspiracy to oppress L. in the exercise of his lawful calling.

    [Ed. Note.—For other cases, see Conspiracy, Cent. Dig. §§ 79, 80, 84–99; Dec. Dig. § 43.*]

Appeal from Westchester County Court.

James F. Davis and two others were indicted for conspiracy, and from an order allowing defendants' demurrer to the indictment, the people appeal. Reversed.

Argued before JENKS, P. J., and BURR, THOMAS, RICH, and STAPLETON, JJ.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Francis A. Winslow, Dist. Atty., of New York City, for the People.
William F. Bleakley, of Yonkers, for respondents.

PER CURIAM. The people appeal from an order giving judgment allowing a demurrer to an indictment. The design of the indictment is to allege the crime of conspiracy as that crime is defined by subdivision 5 of section 580 of the Penal Law (Consol. Laws 1909, c. 40), which reads:

"To prevent another from exercising a lawful trade or calling, or doing any other lawful act, by force, threats, intimidation, or by interfering or threatening to interfere with tools, implements, or property belonging to or used by another, or with the use or employment thereof."

Section 583 of the Penal Law reads:

"No agreement except to commit a felony upon the person of another, or to commit arson or burglary, amounts to a conspiracy, unless some act beside such agreement be done to effect the object thereof, by one or more of the parties to such agreement."

An indictment is required to contain a plain and concise statement of the act constituting the crime. Section 398 of the Code of Criminal Procedure reads:

"Upon a trial for a conspiracy, in a case where an overt act is necessary to constitute the crime, the defendant cannot be convicted, unless one or more overt acts be expressly alleged in the indictment, nor unless one or more of the acts alleged be proved; but any other overt act, not alleged in the indictment, may be given in evidence."

The indictment reads:

"The grand jury of the county of Westchester, by this indictment, accuse James F. Davis, William Sweeney, and Charles Tompkins, of the crime of conspiracy, committed as follows: "That the said James F. Davis, William Sweeney, and Charles Tompkins, all late of the city of Yonkers, in the county of Westchester and state of New York, with force and arms, at the city of Yonkers, in the county of Westchester aforesaid, on the 1st day of November in the year one thousand nine hundred and ten, and on divers days since the said 1st day of November and the day of the finding of this indictment, being of evil minds and dispositions, together with divers other evil-disposed persons whose names are to the grand jury aforesaid unknown, unlawfully, willfully, wickedly, and maliciously contriving, devising, and intending, by threats and intimidation of his customers, to prevent and hinder one James Leach, then and there using and exercising the lawful trade and calling of horseshoer, which he, said James Leach, then and there carried on in a certain house and shop, in the city of Yonkers aforesaid situate, from using and exercising his, said James Leach's, lawful trade and calling of horseshoer, at the city of Yonkers aforesaid, on the divers days aforesaid, unlawfully, willfully, wickedly, and maliciously did conspire, combine, federate, and agree together, between and among themselves, by threats and intimidation of persons patronizing said James Leach, to prevent and hinder the said James Leach from using and exercising his said lawful trade and calling. And the said James F. Davis, William Sweeney, and Charles Tompkins, together with said other evil-disposed persons, in pursuance and furtherance of and according to the said conspiracy, combination, confederacy, and agreement, between and among themselves as aforesaid, afterwards, to wit, on divers days and dates between the said 1st day of November in the year one thousand nine hundred and ten and the day of the filing of this indictment, at the city of Yonkers, in the county of Westchester aforesaid, did unlawfully, willfully, wickedly, and maliciously, by divers threats, exhortations, persuasions, stratagems, and devices, among other things, to cause strikes on work on which

their horses were used, and also to persuade persons not to trade with those of the following persons, who were engaged in business as merchants, attempt and endeavor to intimidate Domenico Mosella, Caleb J. S. Horton, Walter S. Pfister, Michael Lynch, Joseph Lynch, Aladar Berger, John E. Pawson, Michael Hayes, Clarence Pearsall, Charles W. Towner, Harry O. Rex, Martin Broderick, William Hopper, Michael Morando, Albert Custer, Alexander Dawson, Robert Martin, John Vivian, then and there being persons within the said city of Yonkers, there engaged in business, and who owned and used horses, and had their said horses shod by the said Edward Leach, and their servants, employés, and workmen, hired and employed by them, to coerce, induce, and constrain them, said Domenico Mosella, Caleb J. S. Horton, Walter S. Pfister, Michael Lynch, Joseph Lynch, Aladar Berger, John E. Pawson, Michael Hays, Clarence Pearsall, Charles W. Towner, Harry O. Rex, Martin Broderick, William Hopper, Michael Morando, Albert Custer, Alexander Dawson, Robert Martin, John Vivian, to refrain and refuse to have their horses shod by the said James Leach, and to refrain from trading with him, and to prevent and hinder such persons from trading with said James Leach, and by divers other unlawful, subtle, and indirect means, stratagems, and devices did greatly harass, impede, embarrass, and obstruct the said James Leach in the exercise of his lawful trade and calling, to wit, for the better carrying the said agreement, conspiracy, combination, and confederacy in effect and execution, to the great damage, oppression, and grievance of the said James Leach. Contrary to the form of the statute in such case made and provided, and against the peace of the people of the state of New York and their dignity."

The following facts may be disentangled from the sleave of words: At least three persons conspired to prevent one James Leach from exercising the lawful trade or calling of horseshoer, by threatening customers of Leach to cause strikes on works on which the horses of the customers were used, unless the customers refrained and refused to have their horses shod by Leach. An overt act, in pursuance of and furtherance of and according to the conspiracy, to wit, the threats to the customers to cause strikes on the work on which the horses were used, unless they so refused and refrained, is also stated.

It is clear that the acts thus stated constitute the crime of conspiracy, and that the overt act essential to good pleading, where a conspiracy of this nature is charged, has been properly alleged. The right of persons to combine and co-operate for the promotion of such legitimate ends as the increase of wages, the curtailment of the hours of labor, the regulation of their relations with their employers, and for the redress of grievances has been sanctioned by the law of this state. But a conspiracy to inflict injury upon another, or to oppress him in the exercise of his lawful calling, is expressly condemned by the statute law. What may be done lawfully has been so recently declared that it is needless to repeat. Nat. Protective Ass'n v. Cumming, 170 N. Y. 315, 63 N. E. 369, 58 L. R. A. 135, 88 Am. St. Rep. 648; Jacobs v. Cohen, 183 N. Y. 207, 76 N. E. 5, 2 L. R. A. (N. S.) 292, 111 Am. St. Rep. 730, 5 Ann. Cas. 280; People v. Marcus, 185 N. Y. 257, 77 N. E. 1073, 7 L. R. A. (N. S.) 282, 113 Am. St. Rep. 902, 7 Ann. Cas. 118; Kissam v. United States Printing Co., 199 N. Y. 76, 92 N. E. 214. What may not be done with impunity has also recently been the subject of judicial determination (Curran v. Galen, 152 N. Y. 33, 46 N. E. 297, 37 L. R. A. 802, 57 Am. St. Rep. 496; Beattie v. Callanan, 67 App. Div. 14, 173 N. Y. Supp. 518; s. c., 82 App. Div. 7, 81 N. Y. Supp. 413; Newton Co. v. Erickson, 70 Misc. Rep. 291, 126 N. Y.

Supp. 949. Among those things is the use or direction of the power of combination to injure another by preventing him from exercising a lawful trade or calling.

Judgment reversed, and order directed giving judgment disallowing the demurrer.

Argued before JENKS, P. J., and BURR, THOMAS, RICH, and STAPLETON, JJ.

