(174 App. Div. 244)

GRASSI CONTRACTING CO., Inc., v. BENNETT.

(Supreme Court, Appellate Division, First Department. July 10, 1916.)

1. INJUNCTION ⬤101(1)—SUBJECTS OF RELIEF—BREACH OF CONTRACT—EMPLOYMENT.

Where a strike or other action is threatened by a labor union, in violation of its contract, or of the contract of its members with their employer, a court of equity has jurisdiction to issue an injunction.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 174; Dec. Dig. ⬤101(1).]

⬤For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

2. CONTRACTS ☞108(2)—VALIDITY—PUBLIC POLICY.

An employer may lawfully discharge or refuse to employ one because he is or is not a member of a labor union, and may lawfully contract with his employés to employ only union labor and discharge others, or vice versa.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 498–503, 505, 507–511; Dec.. Dig. ☞108(2).]

3. CONTRACTS ☞108(2)—VALIDITY—PUBLIC .POLICY.

Members of labor union may refuse employment with nonmembers, or quit if nonunion labor is continued, and vice versa, so long as this is done for their own interests, and not through a conspiracy to injure others.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 498–503, 505, 507–511; Dec. Dig. ☞108(2).]

4. MASTER AND SERVANT ☞338—INTERFERENCE WITH RELATION.

Employés, not bound by contract, acting in concert or through a labor union, may quit or strike at will for any lawful reason or purpose, or for no reason or purpose, and may endeavor by lawful persuasion, without violence or intimidation, to induce others to join them, or to refrain from taking their places.

[Ed. Note.—For other cases, see Master and Servant, Dec. Dig. ☞338.]

5. INJUNCTION ☞101(3)—TRADE UNIONS ☞8—STRIKES—DAMAGES.

Where a labor organization calls or threatens to call a strike of its members, not primarily for the lawful benefit or advantage of the union or its members, but an unlawful purpose—that is, one prohibited by law, or which contravenes public policy—to the injury of another or others, its action or threatened action, if consummated, will render it liable in damages, and, if not consummated, may be enjoined.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 174, 175; Dec. Dig. ☞101(3); Trade Unions, Cent. Dig. § 6; Dec. Dig. ☞8.]

6. TRADE UNIONS ☞8—STRIKES—INTERFERENCE WITH EMPLOYMENT.

Under Penal Law (Consol. Laws, c. 40) § 582, providing that the orderly and peaceable assembling or co-operation of persons employed in any calling, trade, or handicraft to obtain an advance in the rate of wages or compensation, or maintain such rate, is not a conspiracy, it is lawful to organize, to advance or maintain a schedule rate of wages, and to call a strike for those purposes, where no contract rights are violated, but not for the primary purpose of restricting the freedom of others, by coercing them under penalty of loss and deprivation of employment to join a labor union.

[Ed. Note.—For other cases, see Trade Unions, Cent. Dig. § 6; Dec. Dig. ☞8.]

7. INJUNCTION ☞101(3)—TRADE UNIONS ☞8—STRIKES—INTERFERENCE WITH EMPLOYMENT.

A refusal by the members of a labor union to work with nonmembers, or vice versa, or threat to strike if others are not discharged, where the action is primarily for their own benefit, does not constitute an unlawful interference with the freedom of others, and affords no ground either for damages or for injunctive relief.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 174, 175; Dec. Dig. ☞101(3); Trade Unions, Cent. Dig. § 6; Dec. Dig. ☞8.]

8. CONSPIRACY ☞8—CIVIL LIABILITY—INTERFERENCE WITH EMPLOYMENT.

Under Penal Law, § 580, subd. 5, making it a misdemeanor to prevent another from exercising a lawful trade or calling, or doing any other lawful act, by force, threats, or intimidation, or by interfering or threatening to interfere with tools, implements, or property belonging to or

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

being used by another, or with the use or employment thereof, a resolution by a labor union that a foreman be placed on each job of an employer for one year, and that the whole shop be cleaned out of the men who worked for the employer previous to a violation of union rules complained of, all at the expense of the employer, amounting to two to three times the expense as the employer had been conducting the business, or that a strike be called, is unlawful, and constitutes prima facie evidence of a conspiracy to injure the employer thereof, though, under section 583, requiring an overt act to constitute a conspiracy, no criminal offense is shown; the conspiracy not being taken from the operation of the Penal Law, prohibiting the acts, by the exception in section 582, authorizing combinations to obtain an advance or maintain wages of members of a union.

[Ed. Note.—For other cases, see Conspiracy, Cent. Dig. §§ 7–11; Dec. Dig. ⚖➡8.]

9. INJUNCTION ⚖➡163(7)—SUBJECTS OF RELIEF—INTERFERENCE WITH EMPLOYMENT.

Where a labor union determines to place a foreman over each job of an employer for one year at greatly increased expense to the employer, or to call a strike, an injunction to the union against soliciting or inducing employés by any species of threats, abuses, offers, or promises of money or by any unlawful of other means, to leave the employ of the plaintiff, and from publishing in any manner that the plaintiff's business has been blacklisted, or placed on any unfair list, or from threatening others with injury or loss to their business, should they continue to deal with or be employed by the plaintiff, is too broad, in the absence of evidence that the union intended to do any of those things, and should be modified to enjoin the placing of a foreman on the plaintiff's work for one year, to bring about the discharge of men in the plaintiff's employ, and from interfering with plaintiff's work, other than to see that its members observe its regulations with respect to the hours of labor, so long as plaintiff observes such regulations, and from calling a strike for plaintiff's refusal to allow the union to place a foreman on its contract work, and from taking any other action to punish plaintiff for past violation with respect to hours of labor.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. § 362; Dec. Dig. ⚖➡163(7).]

Appeal from Special Term, New York County.

Action by the Grassi Contracting Company, Incorporated, against Thomas Bennett, as President, etc. From an order granting an injunction pendente lite, defendant appeals. Modified and affirmed.

Argued before CLARKE, P. J., and LAUGHLIN, DOWLING, PAGE, and DAVIS, JJ.

Anna Moscowitz, of New York City, for appellant.
J. Leon Brandmarker, of New York City, for respondent.

LAUGHLIN, J.  The plaintiff is a domestic corporation engaged in the construction of buildings for others. It shows by its complaint and by affidavits: That at the time of the commencement of the action it had the contract for the plastering and cement work on the 14-story apartment house at 103d street and West End avenue, borough of Manhattan, New York, involving about $20,000, and another like contract on a building on Post avenue near 204th street, involving about $18,000. That it was obligated by its contracts to employ only "union labor recognized by the building trades," and each contract

⚖➡For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

contained a clause providing that time was of the essence thereof, and provisions by which after a specified time the plaintiff would be liable to the builders for damages caused by delaying performance of their work. That it had in its employ, engaged in the performance of said contract work, more than 75 plasterers and 40 laborers, all members of the union sued herein, or a branch thereof known as Local 30. That said union is an unincorporated association, and has a membership of more than 3,000, and that it absolutely controls and dominates all but 2 per cent. of the competent plasterers, and that it is impossible to hire journeymen plasterers otherwise than through the union. That section 2 of article 8 of the constitution of the union provides as follows: "Under no circumstances shall any work be done between the hours of 7 and 8 a. m., 12 m. and 1 p. m., and 12 m. and 6 p. m. on Saturdays." That on Saturday, the 8th of April, 1916, two of the members were found by the steward of the union at work on one of said contracts at 1:10 p. m., in violation of said regulation. That this was through inadvertence on the part of said employés with respect to the time, and was without the knowledge or direction of the plaintiff. That at a meeting of the union on the 10th of April, said two members were questioned and stated that violation was solely through inadvertence, and were again questioned and so stated before the executive committee of the union on the 14th of April. That on the 13th of April the plaintiff was notified in writing by the union that charges had been preferred against it for said violation, and it was called upon to appear at a meeting of the executive board of the union to be held on the evening of the 14th of April to answer said charges. That the treasurer of the plaintiff appeared in answer to said notice and denied that the violation was with the knowledge or consent of the plaintiff. That the executive board decided that the plaintiff was conducting its operations in an unfair manner and should be punished, and as a penalty determined to recommend to the union "that a foreman be placed on each and every job which Grassi Contracting Company does for one year, and that the whole shop be cleaned out of the men who worked for them previous to this trouble." That according to the custom of the union, where a foreman is thus placed on work, it selects the foreman, who has and exercises the power to discharge and employ at will, without regard to efficiency, and the contractor is obliged to pay the foreman, and that the cost of the work to him is very materially increased; that the cost of completing one of the contracts, if the plaintiff be permitted to complete it, would be only $1,171.12, and the cost thereof if the union so takes charge would be $4,554.37, and the cost of completing the other by the plaintiff would be only $2,610, and under the supervision of a foreman selected by the union would be $7,412.50. That all of the plaintiff's employés are willing and desirous of continuing in its employ, and have petitioned the union to reconsider its action. That if the contractor should refuse to accept the foremen selected by the union, and to acquiesce in the penalty imposed by it, a strike would be called, and all of its employés would be ordered and required to quit work. That the chairman of the executive board

stated that the board would report its recommendation at a meeting of the union on the 17th of April, and, if adopted, the determination to place foremen on the plaintiff's work for the period of one year would take effect on the 18th of April. That the plaintiff had other contract work on which it was obliged to proceed within two months, involving about $52,000. That the object of the union in taking the action threatened is to injure the business of the plaintiff and to destroy its good will and good name among the building trades. That the threatened action is in violation of a contract between the union and the Employing Plasterers' Association of New York City. That the plaintiff will suffer irreparable damage and loss, for which it has no adequate remedy at law, if the union is permitted to take the action recommended by the executive board.

Although the plaintiff does not show the terms of its contracts with its employés, it does appear that they were willing to continue on the work where they were employed, and it is a fair inference that there was at least an implied contract with them that they would so continue, for it is not reasonable to suppose that there was a special hiring each day. The plaintiff does not set forth the contract between the union and the Employers' Association, which it alleges the union threatens to violate; nor is it alleged or shown that the plaintiff was a party thereto. It is inferentially alleged that the employés are hired through the union, but the plaintiff does not show any contract with the union.

[1-3] Where a strike, or other action, is threatened by a labor union in violation of its contract, or of the contract of its members with their employers, the jurisdiction of a court of equity to issue an injunction is well recognized. Reynolds v. Davis, 198 Mass. 294, 84 N. E. 457, 17 L. R. A. (N. S.) 162; Folsom v. Lewis, 208 Mass. 336, 94 N. E. 316, 35 L. R. A. (N. S.) 787; Nat. Protective Ass'n v. Cumming, 53 App. Div. 227, 65 N. Y. Supp. 946, affirmed 170 N. Y. 315, 63 N. E. 369, 58 L. R. A. 135, 88 Am. St. Rep. 648; Cooke, Combinations, Monopolies, and Labor Unions (2d Ed.) § 67, and cases cited. See also Hitchman Coal & Coke Co. v. Mitchell (D. C.) 202 Fed. 512. But in the case at bar no violation of a contract is threatened, unless a contract between the plaintiff and its employés for their continuance in its employ is to be inferred. The law with respect to many points arising between employers and employés and their unions has been settled in this jurisdiction. An employer may lawfully discharge or refuse to employ one because he is or is not a member of a labor union, and may lawfully contract with his employés to employ only union labor, and to discharge others, or vice versa; but it has been held that employers may not combine and agree to employ either only union or nonunion labor when, owing to the fact that such employers control the trade in any community, or control it to such an extent that it would be practically impossible for those thus discriminated against to obtain employment, for in such case the agreement would be oppressive and contrary to public policy. McCord v. Thompson-Starrett Co., 129 App. Div. 130, 113 N. Y. Supp. 385, affirmed 198 N. Y. 587, 92 N. E. 1090; Farrelly v.

Schaettler, 143 App. Div. 273, 128 N. Y. Supp. 157, affirmed 207 N. Y. 644, 100 N. E. 1127. And members of a labor union may refuse employment with nonmembers, or quit if nonunion labor is continued, and vice versa, so long as this is done for their own interests, and not through a conspiracy to injure others. People v. Marcus, 110 App. Div. 255, 97 N. Y. Supp. 322, affirmed 185 N. Y. 257, 77 N. E. 1073, 7 L. R. A. (N. S.) 282, 113 Am. St. Rep. 902, 7 Ann. Cas. 118; Jacobs v. Cohen, 183 N. Y. 207, 76 N. E. 5, 2 L. R. A. (N. S.) 292, 111 Am. St. Rep. 730, 5 Ann. Cas. 280; Kissam v. United States Printing Co., 199 N. Y. 76, 92 N. E. 214; Davis v. United Engineers, 28 App. Div. 396, 51 N. Y. Supp. 180. See, also, Adair v. United States, 208 U. S. 161–175, 28 Sup. Ct. 277, 52 L. Ed. 436, 13 Ann. Cas. 764.

[4, 5] Employés, *who are not bound by contract,* acting in concert or through a labor union with which they are affiliated, may quit or strike at will for any *lawful* reason, or purpose, and doubtless they may do so for no reason or purpose, and they may endeavor by lawful persuasion, without violence or intimidation, to induce others to join them, or to refrain from taking their places. Mills v. United States Printing Co., 99 App. Div. 605, 91 N. Y. Supp. 185; Nat. Protective Ass'n v. Cumming, supra (and see Judge Gray's opinion, at page 334 of 170 N. Y., page 374 of 63 N. E. [58 L. R. A. 135, 88 Am. St. Rep. 648]); Reynolds et al. v. Everett et al., 144 N. Y. 189, 39 N. E. 72; Davis v. Zimmerman, 91 Hun, 489, 36 N. Y. Supp. 303. See, also, Iron Moulders' Union v. Allis-Chalmers, 166 Fed. 45, 91 C. C. A. 631, 20 L. R. A. (N. S.) 315, Folsom v. Lewis, supra, Horseshoers' Prot. Ass'n v. Quinlivan, 83 App. Div. 459, 82 N. Y. Supp. 288, and Jetton-Dekle Lumber Co. v. Mather, 53 Fla. 969, 43 South. 590. But where a labor organization calls or threatens to call a strike of its members, not *primarily* for the lawful benefit or advantage of the union, or of its members, but for an *unlawful* purpose —that is, one prohibited by law, or which contravenes public policy— to the injury of another or others, then its action or threatened action, if consummated, will render it liable in damages (Curran v. Galen, 152 N. Y. 33, 46 N. E. 297, 37 L. R. A. 802, 57 Am. St. Rep. 496; Jacobs v. Cohen, supra; Purvis v. United Brotherhood, 214 Pa. 348, 63 Atl. 585, 12 L. R. A. [N. S.] 642, 112 Am. St. Rep. 757, 6 Ann. Cas. 275), and, if not consummated, may be enjoined.

[6, 7] It is perfectly lawful to organize to advance or to maintain a scheduled rate of wages, and to call a strike for those purposes, where no contract rights are violated; but not for the *primary* purpose of restricting the freedom of others, by coercing them under a penalty of loss and deprivation of employment to join a labor union. Penal Law, § 582; Curran v. Galen, supra; Mills v. United States Printing Co., supra. But a refusal by the members of a labor union to work with those not belonging to the union, or vice versa, or a threat to strike if others are not discharged, where the action is *primarily* for their own benefit, does not constitute an unlawful interference with the freedom of others, and affords no ground for action, either for damages, or for injunctive relief. Wunch v. Shankland, 59 App. Div. 482, 69 N. Y. Supp. 349, appeal dismissed 170

N. Y. 573, 62 N. E. 1102; s. c., 81 App. Div. 655, 81 N. Y. Supp. 1151, affirmed 179 N. Y. 545, 71 N. E. 1142, on authority of Nat. Protective Ass'n v. Cumming, supra; Mills v. United States Printing Co., supra; Davis v. United Engineers, supra. In Beattie v. Callanan, 67 App. Div. 14, 73 N. Y. Supp. 518 (s. c., 82 App. Div. 7, 81 N. Y. Supp. 413), where a labor union threatened to call a strike of the employés of contractors with the plaintiff, who were members of the union, merely because the plaintiff would not recognize the union and had given affront to its walking delegate, this court reversed an order denying a temporary injunction and the judgment dismissing the complaint, and granted a temporary injunction and permanent injunction respectively. In People v. Davis, 159 App. Div. 464, 144 N. Y. Supp. 284, it was held that threatening plaintiff's customers to call a strike of their employés, unless they ceased to patronize him, constituted a conspiracy to prevent him from exercising a lawful calling within the provisions of section 580 of the Penal Law. See, also, Newton Company v. Erickson, 70 Misc. Rep. 291, 126 N. Y. Supp. 949, affirmed 144 App. Div. 939, 129 N. Y. Supp. 1111. It is sought to justify the threatened action of the union by the violation of its regulations by two of its members in working overtime while in the plaintiff's employ.

[8] It may be assumed that it was within the jurisdiction of the union to prescribe the hours of labor for its members and to enforce such regulations against them by any proper discipline. See Rhodes Bros. Co. v. Musicians' P. U. Local, etc., 37 R. I. 281, 92 Atl. 641, L. R. A. 1915E, 1037; Jetton-Dekle Lumber Co. v. Mather, 53 Fla. 969, 43 South. 590; Master Stevedores' Ass'n v. Walsh, 2 Daly, 1; Saulsberry v. Coopers' International Union, 147 Ky. 170, 143 S. W. 1018, 39 L. R. A. (N. S.) 1203; Schneider v. Local Union No. 60, 116 La. 270, 40 South. 700, 5 L. R. A. (N. S.) 891, 114 Am. St. Rep. 549, 7 Ann. Cas. 868; Scott-Stafford Opera H. Co. v. Minn. M. Ass'n, 118 Minn. 410, 136 N. W. 1092. But it is manifest that the action which it threatens to take cannot be justified on any theory of necessity to prevent further violations of its regulations with respect to hours of labor, and it is a reasonable inference that the violation of the rule has been taken advantage of, and is to be made a pretext for the unlawful action threatened, and although thereby future violations may be prevented, that is not the purpose for which resort to such drastic action is to be had. Doubtless the union was not bound by the claims of the plaintiff and of the two members that the violation was inadvertent, for that claim is somewhat improbable; but it does not follow that the union was at liberty to make such violation the basis of an unlawful demand upon the plaintiff. I assume that it would not be argued that the union would be justified on account of such violation in exacting from the plaintiff a large penalty in money as a condition of allowing its members to continue in the employ of the plaintiff. On the evidence in the record, the action taken is more drastic than the infliction of a heavy money penalty. It not only involves the imposition of a penalty so far as the plaintiff is concerned in the loss of its profits and the expenditure of money in addition thereto, but involves the taking over of its contract work virtually without leaving any control or discretion in the plaintiff with respect thereto.

The threatened action is not designed solely, if at all, to prevent a repetition of the violation of the regulations with respect to the hours of labor, but is conceded by the authorized representative of the union to have been taken to inflict a penalty upon the plaintiff as a punishment, and doubtless it was intended also as a warning to others, and this is shown by the fact that plaintiff is not to be permitted to retain any of its present employés, and that the union is, in effect, to take charge of all its work for a year. This threatened action is unlawful, and, I think, in view of the other material facts, which presumably were known to the officers and members of the union, constitutes prima facie evidence of a conspiracy to injure the plaintiff by preventing it from exercising its constitutional right to continue its business and to hire such employés as it requires to perform its contracts, and to have the work performed under its own direction, or under the supervision or direction of others selected by it. Penal Law, § 580, subd. 5; People v. Davis, supra; Nat. Protective Ass'n v. Cumming, supra; Judge Vann's opinion, 170 N. Y. 340 et seq., 63 N. E. at 375 (58 L. R. A. 135, 88 Am. St. Rep. 648); Newton Co. v. Erickson, supra. See, also, Reynolds v. Davis, supra; Horseshoers' Prot. Ass'n v. Quinlivan, supra; Folsom v. Lewis, supra; Plant v. Woods, 176 Mass. 492, 57 N. E. 1011, 51 L. R. A. 339, 79 Am. St. Rep. 30; Purvis v. United Brotherhood, supra; Erdman v. Mitchell, 207 Pa. 79, 56 Atl. 327, 63 L. R. A. 534, 99 Am. St. Rep. 783; Hopkins v. Oxley, 83 Fed. 912, 28 C. C. A. 99. See, also, Lucke v. Clothing Cutters' & Trim. Assembly, etc., 77 Md. 396, 26 Atl. 505, 19 L. R. A. 408, 39 Am. St. Rep. 421, and Old Dominion S. S. Co. v. McKenna, 18 Abb. N. C. 262.

I do not say that the facts show all of the elements of a criminal conspiracy within the provisions of the Penal Law, §§ 580, 583; but they do tend to show an unlawful conspiracy to injure the plaintiff, which is not taken from the operation of the Penal Law *prohibiting* the acts, by the exception contained in section 582 with respect to combinations to advance and maintain the rate of wages, for manifestly the threat to take over the supervision of the plaintiff's business for a year is not for the purpose of advancing or maintaining the wages of the members of the union. Of course, the plaintiff was not obliged to comply with the demand of the union with respect to selecting and placing a foreman on its work, but I answer that as did Judge Vann in Nat. Protective Ass'n v. Cumming, supra, at page 343 of 170 N. Y., page 378 of 63 N. E. (58 L. R. A. 135, 88 Am. St. Rep. 648), wherein he said:

"It may be argued that the employers were not obliged to yield to these threats, and this is true; but noncompliance meant ruin to them, for their work would be completely tied up and their business paralyzed. A threat, with ruin behind it, may be as coercive as physical force."

The plaintiff, therefore, presented a case for injunctive relief.

[9] The injunction granted, however, is altogether too broad, and is neither warranted by the facts nor the law. Among other things, it in effect enjoins the defendant generally from soliciting or inducing plaintiff's employés, by any species of threats, abuses, offers or prom-

ises of money, or by any unlawful "or other means" to leave the employ of the plaintiff, and from publishing in any manner that plaintiff's business has been blacklisted, or placed on any unfair list, and from threatening others with injury or loss to their business, should they continue to deal with or be employed by the plaintiff. There is no evidence that the defendant has threatened or intends to do any of these things. The defendant is further enjoined, in effect, from calling a strike for any reason, by a general provision enjoining him from directing the members of his union "to refuse to work for the plaintiff."

The injunction order should therefore be modified, by striking out the paragraphs numbered III to VIII, inclusive, and inserting in place thereof a paragraph as follows:

"III. From approving the recommendation of its executive board to place foremen on the plaintiff's work for the period of one year, for the purpose of bringing about the discharge of the men now in the plaintiff's employ, and from taking any other action with respect to placing foremen on the plaintiff's work, or in any manner interfering with the plaintiff's work, or with its employés, other than to require and see that its members observe its regulations with respect to the hours of labor, so long as plaintiff observes the requirements of said regulations with respect to the hours of labor, and from calling a strike, or otherwise directing or requiring its members to refuse to work for the plaintiff, on account of the failure or refusal of the plaintiff to allow the union to place foremen or a foreman on the plaintiff's contract work, and from taking any other action with a view to punishing or making an example of the plaintiff on account of alleged past violations of its regulations with respect to the hours of labor"

—and, as so modified, affirmed, without costs. All concur.