A. H. BULL STEAMSHIP CO., Plaintiff,

v.

NATIONAL MARINE ENGINEERS' BENEFICIAL ASSOCIATION, AFL–CIO, and International Organization of Masters, Mates and Pilots, Inc., AFL–CIO, Defendants.

Civ. No. 18060.

United States District Court
E. D. New York.

Oct. 17, 1957.

Satterlee, Browne & Cherbonnier and Donovan, Leisure, Newton & Irvine, New York City, for plaintiff. James V. Hayes, A. V. Cherbonnier, Theodore S. Hope, Sidney P. Howell, Jr., Helmut J. F. Furth, New York City, of counsel.

Lee Pressman, New York City, for defendant National Marine Engineers' Beneficial Ass'n, AFL-CIO.

Marvin Schwartz, New York City, for defendant International Organization of Masters, Mates and Pilots, Inc., AFL-CIO. Betty H. Olchin, New York City, of counsel.

BRUCHHAUSEN, District Judge.

The plaintiff, an operator of ships engaged in cargo transportation, instituted this action against the defendants for specific performance of collective bargaining agreements, made between the plaintiff and each of the defendants. The subject motion is for provisional remedies, enforcing the agreements, pendente lite.

The defendant, National Marine Engineers' Beneficial Association, AFL-CIO is hereinafter called "MEBA."

The defendant, International Organization of Masters, Mates and Pilots, Inc., AFL-CIO is hereinafter called "MMP."

The plaintiff and the defendant, MEBA, as representative of the licensed engineering officers, employed aboard the plaintiff's vessels, entered into a collective bargaining agreement, bearing date June 18, 1955, which by its terms does not expire until June 15, 1958. The agreement provided that "there shall be no strikes, lockouts or stoppages of work during the period of this agreement," also grievance procedure, for the arbitration of all disputes, relating to its interpretation or performance. It also obligated the defendant MEBA to furnish plaintiff on call, and as the plaintiff might from time to time require, competent and fit licensed officers to serve aboard plaintiff's vessels.

The plaintiff and the defendant, MMP, as the representative of Licensed Deck Officers, other than the Masters of vessels, entered into a similar agreement, bearing date July 1, 1955, expiring on September 30, 1958, which agreement contained an additional provision, viz.:

"It is understood that in the event a picket line is established against any vessel, the Licensed Deck Officers of such vessel will report and perform all of their normal duties incidental to the security of the vessel, passengers and cargo, provided that no Licensed Deck Officers shall be required to work under conditions which may endanger his health or safety. The Organization undertakes to use its best efforts to obtain clearance for such purpose from the Union establishing the picket line."

On or about August 19, 1957 each defendant called a strike against the plaintiff. The strikes have been on ever since.

Prior to the aforesaid work stoppages, negotiations were had, pursuant to wage reopening clauses contained in the agreements. The parties came to no agreement thereon. The plaintiff contends that no dispute then existed between the parties, excepting that the defendants claimed that their members, employed by the plaintiff, had a feeling of insecurity because of fears that the plaintiff's

parent corporation, American Coal Shipping, Inc., whose officers were not and are not represented by the defendants, might take over plaintiff's operations, also that the defendants declined to arbitrate the matter. Significantly, MEBA admits that, besides demanding a 6% wage increase, it requested an additional amount for its engineer members "sufficient to compensate them for a possible complete loss of their jobs through the transfer of their vessels to American Coal" (Exhibit E, attached to affidavit of Herbert L. Daggett, sworn to October 9, 1957). MMP makes a similar admission (affidavit of Charles T. Atkins, October 8, 1957, at page 4). It appears that the plaintiff acquiesced in the 6% wage increase, which had previously been generally adopted in the dry cargo shipping industry.

In neither agreement is the no-strike clause qualified by the wage reopening clause. The defendants, by the terms of the agreements, were not entitled to strike by reason of the collapse of the wage negotiations, whatever the cause.

The work stoppages have caused and are causing serious loss, damage and irreparable injury to the plaintiff for which it has no legal remedy.

### As to the Defendants' Claim that the Court has no Jurisdiction of the Action.

The plaintiff, in its complaint, alleged as the basis for jurisdiction the diversity of citizenship of the parties and Section 301 of the National Labor Management Relations Act, 1947 (29 U. S.C.A. § 185).

There is complete diversity between the plaintiff, a Delaware corporation, and the defendant, MMP, a New York corporation. This cause of action is separate and apart from the plaintiff's case against the defendant MEBA.

There is some doubt as to whether diversity exists in the action between the plaintiff and MEBA, in that there is evidence that some of the members of MEBA reside in the State of Delaware, the same State wherein the plaintiff was and is incorporated.

This leads to a consideration of the second alleged ground of jurisdiction, the aforesaid Section 301 of the National Labor Management Relations Act, 1947, which vests District Courts with jurisdiction of "suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this Act * * * without respect to the amount in controversy or without regard to the citizenship of the parties."

The defendant, MEBA, contends that it is not "a labor organization" and the individuals it represents are not "employees," as those terms are defined in the Act, but that they are "supervisors." Section 2(3) of the Act provides that supervisors shall not be deemed employees. Supervisory personnel are in the category of management and, therefore, were and are not within the scope and purpose of the statute.

The plaintiff claims that in various prior proceedings the defendant MEBA made admissions that it was "a labor organization," while, on the other hand, the said defendant challenges those statements or their effect and alleges that the individuals are "supervisors," within the meaning of the Act. As to the present application, it is not necessary to adjudicate these issues, other than to find, as this Court does find that the plaintiff presents a substantial Federal question and that this Court can decide the matter only after it has assumed jurisdiction over the controversy. The complaint herein alleges the violation of a single right, the right to have its agreement performed and a single claim for relief. Under these circumstances, the Court assumes jurisdiction of the action. Strachman v. Palmer, 1 Cir., 177 F.2d 427, 12 A.L.R.2d 687; Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148; and Brown v. Haldale Estates, Inc., D.C., 151 F.Supp. 118.

The defendants further contend, that even if this Court should have juris-

diction of the action by reason of diversity or otherwise, such jurisdiction is controlled or limited by the Norris-LaGuardia Act of 1932 (29 U.S.C.A. § 101 et seq.), particularly Section 104 thereof, which provides, in substance, that a Federal Court may not issue an injunction in a "labor dispute."

At the time of enactment of that law, the country was in the grip of a severe economic depression and collective bargaining was practically non-existent. The legislative policy, proclaimed in Section 102, emphasizing that workers should be unhampered in their efforts to organize, stated that "the individual unorganized worker is commonly helpless to exercise actual liberty of contract and to protect his freedom of labor, and thereby to obtain acceptable terms and conditions of employment." To the same effect is the statement in the recent case of Textile Workers Union of America v. Lincoln Mills of Alabama, 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972, viz.:

"The Norris-LaGuardia Act * * was designed primarily to protect working men in the exercise of organized, economic power which is vital to collective bargaining."

Clearly, the purpose of the statute was to force employers to bargain collectively with their employees.

Likewise, it is plain that the Congress intended that "supervisors" should not be governed by that Act, or by any other national or local law in that in Section 14(a) (29 U.S.C.A. § 164(a)) of the National Labor Management Relations Act, 1947, it is stated that "no employer * * * shall be compelled to deem individuals defined herein as supervisors as employees for the purpose of any law, either national or local, relating to collective bargaining."

The intent of Congress that supervisory personnel should be regarded as part of the management for the purpose of collective bargaining is disclosed in the report of the House Committee on Education and Labor, H.R. Report No. 245, 80th Congress, First Session, 1947.

See also National Labor Relations Board v. Edward G. Budd Manufacturing Co., 6 Cir., 169 F.2d 571, 578 and L. A. Young Spring & Wire Corp. v. National Labor Relations Board, 82 U.S.App.D.C. 327, 163 F.2d 905, 906.

A dispute between an employer and a supervisory union over the terms of employment of its members, therefore, is no more a "labor dispute" than a disagreement between officers of a corporate entity or any other group of employers. See 260 Madison Avenue Corp. v. Nelson, 284 App.Div. 254, 131 N.Y.S.2d 426.

It follows that the Norris-LaGuardia Act does not affect or bar the plaintiff herein.

In the absence of statutory restriction, such as set forth in that Act, a Federal Court has the power to enjoin. Gomez v. United Office and Professional Workers, D.C., 73 F.Supp. 679, 683.

Furthermore, where New York law is applicable, it should be followed by a Federal Court. Guaranty Trust Co. v. York, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079. The New York Courts have granted injunctions in cases of violations of no-strike clauses. Stewart Stamping Corp. v. Uprichard, Sup., 133 N.Y.S.2d 579, order affirmed 284 App.Div. 902, 134 N.Y.S.2d 392; Bee Line, Inc., v. Long Island Local 252, etc., Sup., 157 N.Y.S. 2d 232 and Schlesinger v. Quinto, 117 Misc. 735, 192 N.Y.S. 564, 569, affirmed in 201 App.Div. 487, 194 N.Y.S. 401, 410.

In the said Schlesinger case in the lower court, Mr. Justice Wagner, later a member of the United States Senate, said:

"It is elementary, and yet sometimes requires emphasis, that the door of a court of equity is open to employer and employee alike. It is no respecter of persons—it is keen to protect the legal rights of all."

The Appellate Court in sustaining the injunction decree granted by Mr. Justice Wagner, pointed out that the officials of a labor union are obligated to exercise their powers of requiring performance of

the contract by the Union members. The Court, on this point, said:

"Two organizations, one composed of employers and the other of employees, have entered into an agreement. Each had power through the consent of its members to enter into a binding obligation in their behalf. By the constitution or by-laws of each, power is given to the organization to enforce, through disciplinary proceedings which have been demonstrated to be effective, compliance with the terms and conditions to which it has subscribed. This contract has mutual obligations binding on the parties thereto. Each party knows the obligation that it has assumed and the consequences of failure or refusal to perform those requirements. Through its control of its members it can compel performance. Under such circumstances, a decree of a court of equity can be enforced against either party and in favor of the other. Grassi Contracting Co. v. Bennett, 174 App.Div. 244, 248, 160 N.Y.S. 279. An organization, having such power to require performance by individual members, can through its officers be compelled to exercise that power. There is in this contract a mutuality of obligation, and there is also a mutuality of remedy for its enforcement."

While in the recent case of Textile Workers of America v. Lincoln Mills of Alabama, 353 U.S. 448, 77 S.Ct. 912 (decided June 3, 1957), the plaintiff therein, a labor union, invoked the Court to act, pursuant to Section 301 of the 1947 Act, and to order the defendant, the employer, to submit to arbitration, as provided by the terms of the collective bargaining agreement, entered into between the parties, it has an important bearing upon the instant controversy. It also contained a no-strike clause, similar to the one in the case at bar. The Court, in its opinion, in the said case quoted from the Senate and House Reports, which preceded the enactment of the statute. It appears in both reports that the primary concern was that unions and employers should both be bound to collective bargaining contracts and be governed by "the usual processes of the law."

The intent and purpose of the legislation, reported by the Senate, quoted in the said opinion, in substance, is as follows:

1. That the chief advantage which an employer can reasonably expect from a collective labor agreement is the assurance of uninterrupted operation during the term of the agreement.

2. That without some effective method of assuring freedom from economic warfare for the term of the agreement there is little reason why an employer would desire to sign such a contract.

3. That to encourage the making of agreements and to promote industrial peace through faithful performance by the parties, collective agreements affecting interstate commerce should be enforceable in the federal courts.

It will be noted that the Senate Committee, so reporting, did not limit faithful performance to any particular breach or to any particular party, committing the breach. It clearly meant to insure faithful performance of the entire agreement to the end that there should be industrial peace. There could be no such assurance if either party, at will, might breach the contract by refusal to perform, and there be no adequate enforcement procedure.

The facts and the law warrant the remedy of specific performance, which embraces affirmative as well as negative acts. Kulukundis Shipping Co. S/A v. Amtorg Trading Corp., 2 Cir., 126 F.2d 978.

The plaintiff's motion is granted. The defendants' cross motions are denied. Settle order on two days' notice at which time the parties may submit their proposals as to security and preference of the trial.