**A. H. BULL STEAMSHIP CO.,**
**Plaintiff-Appellee,**

v.

**NATIONAL MARINE ENGINEERS' BENEFICIAL ASSOCIATION, AFL-CIO and International Organization of Masters, Mates and Pilots, Inc., AFL-CIO, Defendants-Appellants.**

**No. 166, Docket 24874.**

United States Court of Appeals
Second Circuit.

Argued Oct. 28, 1957.

Decided Nov. 21, 1957.

See also 250 F.2d 326, reversing 155 F.Supp. 739.

Lee Pressman, New York City, for defendant-appellant Nat. Marine Engineers' Beneficial Ass'n, AFL-CIO.

Marvin Schwartz, New York City (Betty H. Olchin, New York City, on the brief), for defendant-appellant Internat. Organization of Masters, Mates and Pilots, Inc., AFL-CIO.

James V. Hayes, of Donovan, Leisure, Newton & Irvine, New York City (A. V. Cherbonnier, of Satterlee, Browne & Cherbonnier, and Theodore S. Hope, Sidney P. Howell, Jr., and Helmut J. F. Furth, of Donovan, Leisure, Newton & Irvine, New York City, on the brief), for plaintiff-appellee.

Before CLARK, Chief Judge, and LUMBARD and MOORE, Circuit Judges.

CLARK, Chief Judge.

A. H. Bull Steamship Co. brought suit below against the defendant unions seeking injunctive relief and damages for alleged breaches of collective bargaining agreements between plaintiff and each defendant. Bull alleged that the court had jurisdiction of the action as a case arising under § 301 of the Taft-Hartley Act of 1947, 29 U.S.C. § 185, and by reason of the diversity of citizenship of the parties. At the outset of the action Bull moved for an injunction *pendente lite* restraining the unions from continuing peaceful strikes then in progress and requiring them to furnish plaintiff with qualified licensed officers. These strikes and defendants' failure to provide personnel constitute the alleged breaches of contract. The defendants moved to dismiss the action for lack of jurisdiction. The trial court heard the motions on affidavits and briefs, and determined that Bull's allegations of jurisdiction raised a substantial federal question. It denied defendants' motions and issued an extensive injunction *pendente lite*.[1] Its opinion is reported in D.C.E.D.N.Y., 156 F.Supp. 190. Both unions appeal from the orders and contend that the court

---

1. The main provisions of the injunction are contained in the following paragraphs:

"Ordered that, effective October 21, 1957 at 5:00 P.M. Eastern Daylight Saving Time, defendants National Marine Engineers' Beneficial Association, AFL-CIO, and International Organization of Masters, Mates and Pilots, Inc., AFL-CIO, their officers, agents, members, servants, employees, attorneys, and all persons in active concert or participation with them who shall or may receive actual notice of this Order, be and the same hereby are enjoined and restrained, during the pendency of this action, from picketing, striking or inciting, causing, inducing, or, in any manner, directly or indirectly, supporting any work stoppage aboard any of the vessels owned or operated by plaintiff, A. H. Bull Steamship Co., or any of its subsidiaries, wherever any such vessels may be situate or, during the pendency of this action, may call; and it is

"Further Ordered that each of said defendants specifically perform its respective agreement to furnish the plaintiff with capable, competent and physically fit licensed engineering or deck officers when and where they are required and of the ratings needed to fill vacancies necessitating the employment of such Licensed Personnel in ample time to prevent any delay in the scheduled departure of any vessel covered by said agreements; and it is

"Further Ordered that each of said defendants shall, so long as this Order remains in effect, promptly clear, validate or otherwise certify for employment aboard plaintiff's said vessels such qualified licensed officers who are members of the defendants' Unions as plaintiff may, from time to time, require."

had no jurisdiction to issue the preliminary injunction.

The facts are largely undisputed. Bull, a Delaware corporation, is an operator of ships engaged in interstate and foreign commerce. National Marine Engineers' Beneficial Association, AFL-CIO (MEBA), an unincorporated association, represents licensed engineering officers aboard Bull's ships. International Organization of Masters, Mates and Pilots, AFL-CIO (MM&P), a New York membership corporation, represents licensed deck officers, other than masters, aboard these ships. Bull and MEBA entered into a collective bargaining agreement on June 18, 1955, which will expire on June 15, 1958. Bull and MM&P entered into a similar agreement on July 1, 1955, which runs until September 30, 1958. Both agreements provide that "[t]here shall be no strikes, lockouts, or stoppages of work during the period of this agreement." Both agreements also provide for wage reviews after the first anniversary dates of the agreements. After the first anniversary dates each defendant notified Bull that it wished to renegotiate wages. Negotiations took place, but were unsuccessful; and on August 19, 1957, both unions called peaceful strikes to enforce their demands. The peaceful strikes continued until the trial court issued its order. The parties disagree whether or not these strikes constitute breaches of the contracts, the controversy mainly concerning whether or not the no-strike clauses are applicable to the wage-reopening clauses. Except to the limited extent discussed below, we find it unnecessary to ascertain whether or not the strikes actually constituted breaches of the contracts, since, even if they did, the trial court exceeded its jurisdiction in issuing the injunction.

Our recent decision in A. H. Bull Steamship Co. v. Seafarers' International Union of North America, 2 Cir., 250 F.2d 326 (practically a companion case to this one) is in nearly all respects dispositive of this case. For, as we explain below, here also the issuance of an injunction is forbidden by the Norris-La-Guardia Act, 29 U.S.C. §§ 101 et seq. Before reaching that point, however, we must examine the trial court's assumption of jurisdiction to issue the preliminary injunction.

Bull alleged in its complaint that the trial court had jurisdiction of the action as a case arising under § 301 of the Taft-Hartley Act of 1947, 29 U.S.C. § 185, and by reason of the diversity of citizenship of the parties. We first address ourselves to these allegations as they concern MEBA. MEBA is an unincorporated association, and all of its members must be citizens of states other than Delaware for diversity of citizenship to exist between it and Bull. Levering & Garrigues Co. v. Morrin, 2 Cir., 61 F.2d 115, affirmed 289 U.S. 103, 53 S.Ct. 549, 77 L.Ed. 1062; Hettenbaugh v. Airline Pilots Ass'n International, 5 Cir., 189 F.2d 319. But the trial court did not premise its jurisdiction to issue the injunction on diversity grounds, for it found evidence that members of MEBA reside in the State of Delaware. Rather, it held that Bull's complaint presented a substantial question of federal jurisdiction under § 301 of the Taft-Hartley Act of 1947, 29 U.S.C. § 185, which it could not decide until assuming jurisdiction over the controversy.

The substantial question involves an interpretation of § 301(a). That section provides:

> "Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce * * * may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

MEBA contends that its collective bargaining contract with Bull is not a contract "between an employer and a labor organization representing employees," and thus § 301 does not give the district court jurisdiction to entertain the action. The Union maintains

that all its members employed by Bull are "supervisors" and not "employees" as defined in the Act.[2] Moreover, it contends that it is not a "labor organization" as defined in the Act, because it does not represent statutory "employees."[3] If MEBA's factual allegations are correct, § 301 by its own terms is inapplicable to this action.

The substantial question thus resolves itself into one of fact: Are the members of MEBA covered by the collective bargaining contract with Bull "supervisors" within the definitions of the Act? If they are "supervisors," then MEBA is not a "labor organization representing employees" for the purposes of this action. This result follows even if some members of MEBA outside of this bargaining unit are "employees." Section 2(5) of the Act, 29 U.S.C. § 152(5), defines a "labor organization" as "any organization * * * in which employees participate and which exists for the purpose * * * of dealing with employers concerning * * * conditions of work." In order to effectuate Congress' avowed intention to remove supervisors from the protections of the National Labor Relations Act,[4] this definition must be interpreted to mean an organization of "employees" covered by the collective bargaining agreement in question and which exists for the purpose of dealing with *their* employer. Otherwise individuals excluded by the Act could join unions which represent some "employees" and gain the protections of the Act. Thus if MEBA were classified as a "labor organization" for purposes of this action simply because some of its members who are not within this bargaining unit are statutory "employees," then supervisors could gain the protections of the Act by joining either vertically integrated unions or unions which, in some parts of the country, represent nonsupervisory personnel. This result was not intended by Congress.[5]

The trial court had extensive evidence before it on this question of fact. This evidence included affidavits of MEBA officials testifying that MEBA's members are supervisors and Bull's allegations in the state court proceeding that "[T]he classifications of persons represented by the MM&P and MEBA being supervisory personnel, the said picketing

2. The Act, 29 U.S.C. § 152, defines "employees" and "supervisors" as follows:

"(3) The term 'employee' shall include any employee, and shall not be limited to the employees of a particular employer, unless this subchapter explicitly states otherwise, and shall include any individual whose work has ceased as a consequence of, or in connection with, any current labor dispute or because of any unfair labor practice, and who has not obtained any other regular and substantially equivalent employment, but shall not include any individual employed as an agricultural laborer, or in the domestic service of any family or person at his home, or any individual employed by his parent or spouse, or any individual having the status of an independent contractor, or any individual employed as a supervisor, or any individual employed by an employer subject to the Railway Labor Act, as amended from time to time, or by any other person who is not an employer as herein defined."

"(11) The term 'supervisor' means any individual having authority, in the interest of the employer, to hire, transfer, suspend, lay off, recall, promote, discharge, assign, reward, or discipline other employees, or responsibly to direct them, or to adjust their grievances, or effectively to recommend such action, if in connection with the foregoing the exercise of such authority is not of a merely routine or clerical nature, but requires the use of independent judgment."

3. The Act, 29 U.S.C. § 152(5), defines a "labor organization" as follows:

"(5) The term 'labor organization' means any organization of any kind, or any agency or employee representation committee or plan, in which employees participate and which exists for the purpose, in whole or in part, of dealing with employers concerning grievances, labor disputes, wages, rates of pay, hours of employment, or conditions of work."

4. See H.R.Rep. No. 245, 80th Cong., 1st Sess. 8, 13, 15, 17; Sen.Rep. No. 105, 80th Cong., 1st Sess. 3-5, 14.

5. H.R.Rep. No. 245, 80th Cong., 1st Sess. 15; Sen.Rep. No. 105, 80th Cong., 1st Sess. 3-4.

is not the result of a labor dispute as that term is defined in the Labor Management Relations Act of 1947, as amended." In addition, as discussed below, the trial court held the prohibitions of the Norris-LaGuardia Act, 29 U.S.C. §§ 101 et seq., inapplicable to this case because it was a dispute between an employer and supervisors (not "employees"). It is difficult for us to see how MEBA's members can be "supervisors" for purposes of the Norris-LaGuardia Act, and "employees" for purposes of the Taft-Hartley Act of 1947.

The trial court nevertheless decided to defer its factual determination of the jurisdictional issue until another time. It said:

> "The plaintiff claims that in various prior proceedings the defendant MEBA made admissions that it was a 'labor organization,' while, on the other hand, the said defendant challenges those statements or their effect and alleges that the individuals are 'supervisors,' within the meaning of the Act. As to the present application, it is not necessary to adjudicate these issues, other than to find, as this Court does find that the plaintiff presents a substantial Federal question and that this Court can decide the matter only after it has assumed jurisdiction over the controversy. The complaint herein alleges the violation of a single right, the right to have its agreement performed and a single claim for relief. Under these circumstances, the Court assumes jurisdiction of the action. Strachman v. Palmer, 1 Cir., 177 F.2d 427, 12 A.L.R.2d 687; Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148; and Brown v. Haldale Estates, Inc., D.C., 151 F.Supp. 118." D.C.E.D.N.Y., 156 F.Supp. 190, 192.

Hurn v. Oursler, 289 U.S. 238, 53 S.Ct. 586, 77 L.Ed. 1148, and Strachman v. Palmer, 1 Cir., 177 F.2d 427, 12 A.L.R.

2d 687, involve the doctrine of "pendent jurisdiction." Those cases hold that, where a federal court in disposing of a federal ground for relief hears evidence concerning the merits of a similar non-federal ground not otherwise subject to its jurisdiction, the court may dispose of the non-federal grounds. The doctrine finds its justification in avoiding wasteful relitigation of essentially the same issues, thereby serving the convenience of both the parties and the courts. But there is no such saving where, as here, there has been no trial on the merits and the doctrine is resorted to as a means of drawing wide areas of state law into federal cognizance for the issuance of labor injunctions on affidavits, contrary to federal principles. Although Bull argues for just such an extension of federal jurisdiction, it must be said that the trial court (beyond citing the two cases as above) never goes so far and nowhere indicates that it issued the preliminary injunction on some separate state ground supporting the relief. It only goes so far as to hold that where a breach of contract exists it may enjoin the breach *pendente lite* and defer deciding questions of its jurisdiction until trial. But even this we hold to be stepping outside its authority.

██ Undoubtedly, in a proper non-labor case, a federal court may issue a preliminary injunction pending its determination of a substantial question of federal jurisdiction of the action. If this were not so a court would be powerless to maintain the *status quo* in a proper case due solely to defendant's attack on its jurisdiction. But substantial probability that the court will find a basis for federal jurisdiction, like the probability of a plaintiff's final success on the merits, is a crucial element necessary to justify the issuance of an injunction *pendente lite*.[6] Here (postponing for a moment any consideration of the prohibitions of the Norris-LaGuardia Act) it appears quite likely that the

---

6. Hall Signal Co. v. General R. Signal Co., 2 Cir., 153 F. 907; Nadya, Inc. v. Majestic Metal Specialities, D.C.S.D.N.Y., 127 F.Supp. 467.

court below has no jurisdiction under § 301 of the Taft-Hartley Act, 29 U.S.C. § 185, for the supervisory status of the MEBA employees of Bull is well established in the pleadings, affidavits, and briefs below. And where the probability of jurisdiction is doubtful, the only justification for issuing the preliminary injunction is that Bull will suffer irreparable harm from a maintenance of the *status quo* during the period necessary to determine the jurisdictional question which far outweighs the possible harm to MEBA and the expressed public policy forbidding federal courts to issue labor injunctions. This possibility is not shown here. In fact Bull's delay in seeking this relief controverts the probability of irreparable harm during the few days it might take the trial court to resolve the jurisdictional question.

The foregoing discussion applies in the case of MM&P to the extent that the trial court rested the injunction against it on the probability of jurisdiction under § 301. Bull now strives to sustain the injunction on state grounds. But since we hold that the Norris-LaGuardia Act prohibited the issuance of this injunction we shall not here comment on the propriety of applying state substan-

tive rules to this controversy if jurisdiction is rested on the diverse citizenship of Bull and MM&P.[7]

■ The Norris-LaGuardia Act § 4, 29 U.S.C. § 104, prohibits the district court from issuing the injunction herein, for this is a case involving or growing out of a labor dispute as defined in § 13 of the Act, 29 U.S.C. § 113.[8] And Congress, in § 301 of the Taft-Hartley Act of 1947, 29 U.S.C. § 185, did not impliedly repeal the Norris-LaGuardia Act to the extent that federal courts may now enjoin breaches of no-strike clauses in collective bargaining contracts. See our full discussion of this issue in A. H. Bull Steamship Co. v. Seafarers' International Union of North America, 2 Cir., 250 F.2d 326.

■■ Bull argues, and the court below held, that § 14(a) of the Taft-Hartley Act of 1947, 29 U.S.C. § 164(a), makes the Norris-LaGuardia Act inapplicable to cases involving employers and their supervisory employees. That section provides:

"Nothing herein shall prohibit any individual employed as a supervisor from becoming or remaining a member of a labor organization,

---

7. If there is a paramount federal law governing collective bargaining agreements between employers and employees in interstate commerce, as Justice Douglas seems to forecast in Textile Workers Union of America v. Lincoln Mills of Alabama, 353 U.S. 448, 77 S.Ct. 912, 1 L. Ed.2d 972, then it will control, whatever the ground of jurisdiction, whether diversity of citizenship, pendent jurisdiction, or federal question. See Maternally Yours, Inc. v. Your Maternity Shop, Inc., 2 Cir., 234 F.2d 538, 540 note 1, 545–546, citing cases. [Judges Lumbard and Moore think it unnecessary to comment on this point at this time.]

8. 29 U.S.C. § 113 provides the following definitions:

"(a) A case shall be held to involve or to grow out of a labor dispute when the case involves persons who are engaged in the same industry, trade, craft, or occupation; or have direct or indirect interests therein; or who are employees of the same employer; or who are members of the same or an affiliated organization of

employers or employees; whether such dispute is (1) between one or more employers or associations of employers and one or more employees or associations of employees; (2) between one or more employers or associations of employers and one or more employers or associations of employers; or (3) between one or more employees or associations of employees and one or more employees or associations of employees; or when the case involves any conflicting or competing interests in a 'labor dispute' (as defined in this section) of 'persons participating or interested' therein (as defined in this section)."

"(c) The term 'labor dispute' includes any controversy concerning terms or conditions of employment, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment, regardless of whether or not the disputants stand in the proximate relation of employer and employee."

but no employer subject to this subchapter shall be compelled to deem individuals defined herein as supervisors as employees for the purpose of any law, either national or local, relating to collective bargaining."

Section 14(a) makes no explicit reference to the Norris-LaGuardia Act. The clause "no employer subject to this subchapter shall be compelled to deem individuals defined herein as supervisors as employees for the purpose of any law, either national or local, relating to collective bargaining" contained in § 14(a) obviously does not relate to the Norris-LaGuardia Act, which prohibits federal injunctions in labor dispute cases, whether the dispute is between employers and employees, employers and employers, or employees and employees. 29 U.S.C. § 113(a). The legislative history of § 14(a) makes it clear that Congress intended the quoted clause to describe statutes which require employers to bargain collectively or be guilty of an unfair labor practice or its state law equivalent. The whole thrust of the supervisor provisions in the Taft-Hartley Act of 1947 was to remove supervisors from the operation of the National Labor Relations Act and return them "to the basis which they enjoyed before the passage of the Wagner Act." [9] And no mention is made in the statute, the reports, or the congressional debate indicating that the Norris-LaGuardia Act was henceforth to be inapplicable to peaceful strikes by supervisory personnel. Moreover, contrary to Bull's contentions, denying the injunction on the basis of the Norris-LaGuardia Act does not compel Bull to bargain collectively with its supervisors in contradiction of the purpose of § 14(a). Bull can refuse to bargain, discharge the supervisors, and be guilty of no unfair labor practice or conduct proscribed by any other law, either national or local, relating to collective bargaining.

Order reversed; action remanded for proceedings by the district court consistent with this opinion.

---

9. Sen.Rep. No. 105, 80th Cong., 1st Sess. 28, comments on § 14 as follows: "This is a new section which makes it clear that the amendments to the act do not prohibit supervisors from joining unions, but that it is contrary to national policy for other Federal or State agencies to compel employers who are subject to the National Board to treat supervisors as employees for the purpose of collective bargaining or organizational activity."

Senator Taft, explaining the status of supervisors under the Act, said during congressional debate:

"I shall try to summarize the changes which have been made. They are important. They make a substantial step forward toward the furnishing of equal bargaining power.

"The bill provides that foremen shall not be considered employees under the National Labor Relations Act. They may form unions if they please, or join unions, but they do not have the protection of the National Labor Relations Act. They are subject to discharge for union activity, and they are generally restored to the basis which they enjoyed before the passage of the Wagner Act." 93 Cong. Rec. 3952 (1947).